128 So.2d 132 (1961)
Robert Lee JEFFERSON, Appellant,
v.
STATE of Florida, Appellee.
No. 30815.
Supreme Court of Florida.
March 24, 1961.
*133 Marvin A. Urquhart, Jr., Panama City, for appellant.
Richard W. Ervin, Atty. Gen., Joe L. McClung, Asst. Atty. Gen., for appellee.
HOBSON, Justice.
This case is before the court on a direct appeal from a judgment of guilty of murder in the first degree and a sentence of death imposed by the Circuit Court of the Fourteenth Judicial Circuit in and for Bay County, Florida. The defendant entered a plea of not guilty to the charge of murder in the first degree.
Because of the issues involved, it is more appropriate to enucleate the facts of the case as they were related by each witness at the trial than to attempt to narrate them in chronological fashion.
J.D. Nolin, a police lieutenant of the Panama City police department, testified that at approximately 10:00 P.M. on January 10, 1960 he drove his patrol car into the Kayo Oil Station on Fifteenth Street in Panama City, Florida. As he pulled into the station, he noticed that a dark blue 1950 Buick automobile was parked at the station. He saw the defendant, with whom he was acquainted, walk around the car from the driver's side to the passenger's side and enter. The car then drove out of the station with a driver whom the witness was unable to identify. Nolin, for no apparent reason, made a mental note of the license number of the Buick as it pulled out of the station. Immediately thereafter the witness discovered that there was no one in attendance at the station. He became suspicious and radioed a "pick-up" request to police headquarters.
A police officer, Roy Womble, of the City of Lynn Haven, Florida, a town near Panama City, testified for the State that at approximately 10:00 o'clock on the night of January 10, he spotted the Buick automobile on which the "pick-up" had been broadcast by the Panama City police and followed the car to a highway intersection a short distance from Lynn Haven where he turned on his red light and siren. As soon as the car stopped, the defendant, who was then driving, got out of the car quickly and rushed back to the police car. Womble requested to see the defendant's driver's license, and while the defendant was fumbling for it, the witness observed the deceased slide out of the front seat of the automobile onto the highway and heard him say, "Help me, Mister, he has shot me." After helping the deceased into the police car, the witness asked the defendant if he had shot the deceased and he replied, "Yes, sir." The deceased then stated that he had given him all his money and he had begged him not to shoot him. Womble then asked Jefferson why he had shot him, and the defendant replied that he had told the deceased that if he didn't quit begging to go home to his wife and kids he was going to shoot him, and he wouldn't hush. The witness called for an ambulance and for assistance from the Bay County Sheriff's office. Shortly thereafter a deputy sheriff, Leonard Finch, arrived on the scene. Finch asked the defendant where the gun was. The defendant first said he had no gun but later told him it was under the front seat of the car. Womble went to the car and found the gun. At the trial, Womble *134 identified the gun which he had removed from under the front seat of the car which the defendant had been driving. Womble also testified that he had seen the defendant hand some money to Deputy Finch in response to a question as to where the money was. The defendant also stated that there was some change in the glove compartment. Womble went to the car, got the change and turned it over to Finch.
Deputy Sheriff Finch testified for the State that at about 11:00 o'clock he received a call from the Lynn Haven policeman requesting assistance. On arriving at the scene he asked the deceased who had shot him and he replied, "That Nigger standing out there." Jefferson then admitted shooting the decedent. After finding the gun and money in the manner described by the witness Womble, Finch inquired of the defendant whether he had shot the deceased before or after the robbery, and the defendant replied, "After." Finch then asked why he had shot him and the defendant replied, "He kept begging and wanted to go home to his wife and kids and I taken all I could and I put the barrel of the gun to his neck and pulled the trigger."
Thereafter the ambulance took the deceased to the hospital and the defendant was taken to the Bay County jail.
Lowell Spooner, an ambulance driver, testified for the State, in effect, that he had picked the deceased up at the site where the Buick automobile had stopped, took him to a local hospital and later transported the deceased to a hospital in Mobile, Alabama, and that he brought the deceased's body back to Panama City after he had died on the way to Mobile.
A nephew and a brother of the deceased testified as to the identity of the deceased. The nephew additionally testified that he had accompanied the deceased to Mobile in the ambulance, and that he was with him when he died.
Two doctors testified that they had examined the deceased's wound. The wound was identified as being caused by a bullet which entered deceased's neck behind his left ear close to the hair line. It was the opinion of both doctors that this was the cause of death.
Floyd Nixon, Chief investigator of Bay County Sheriff's office, testified for the State in effect that he had interviewed the defendant on two occasions after his arrest. The defendant made both an oral and a written statement in which he admitted in substance that on the date in question he needed some money and decided he would "go out and try to get some". He borrowed a car from a friend and drove it to the service station in question. He stated that he selected this station because there was only one man in attendance. He pulled into the station and at gun point forced the attendant to get in the automobile and drive. After driving some distance he ordered the deceased to stop the car, and he took the money from him. Part of the money was change which was removed from a coin changer which the deceased had attached to his belt. They then rode around some more, during which time the deceased, at the order of the defendant, threw the money changer out of the car. The defendant then stated that after he had changed places with the deceased and had started driving the car, he had shot the deceased accidentally when the deceased made a lunge for him. He denied that he ever had any intention of harming or threatening the deceased and stated that the shooting itself was an accident. Nixon testified that the defendant conducted him to the place where the money changer had been thrown from the car. The changer was recovered and received in evidence at the trial. In addition, the oral and the written statements were received in evidence.
The above constituted the case of the State, and at the close thereof counsel for the defendant moved for a directed verdict on the ground that the corpus delicti had not sufficiently been established by evidence aliunde the confessions and admissions of *135 the accused. The motion for directed verdict was denied. The defendant himself was the only witness for the defense. He admitted robbing the deceased and told how the shooting occurred, stating again that it was accidental. He denied any intention on his part to harm the deceased and denied ever having made any statements to anyone to the effect that he had intentionally killed him. He also denied hearing the deceased tell anyone that he had shot him although he had begged him not to do so.
On appeal, counsel for the defense concedes that in this case a conviction of murder in the first degree may be had upon proof of either actual premeditated design on the part of the defendant, or by proof that the killing was committed in the perpetration of, or in the attempt to perpetrate the crime of robbery. Section 782.04, F.S.A. It is contended, however, that the only evidence introduced by the State as to either actual premeditation or as to the perpetration of a robbery was contained in the confessions or admissions of the defendant. It is the position of the defense, therefore, that the corpus delicti was not sufficiently established.
In order to establish the corpus delicti in a homicide case, it is necessary to prove three elements: first, the fact of death; second, the criminal agency of another person as the cause thereof; and third, the identity of the deceased person. Lee v. State, 96 Fla. 59, 117 So. 699; Deiterle v. State, 101 Fla. 79, 134 So. 42; Hulst v. State, 123 Fla. 315, 166 So. 828; Spanish v. State, Fla., 45 So.2d 753; and Freeman v. State, Fla.App., 101 So.2d 887.
In dealing with cases of homicide involving an issue of corpus delicti, it is necessary to remember that the term corpus delicti encompasses a dual aspect. On the one hand, there is the requirement that there be sufficient evidence introduced by the State tending to prove the three essential elements of corpus delicti before the jury will be permitted to consider any admission or confession of the defendant. When the term is used in this sense there is no requirement for proof of the elements beyond a reasonable doubt. It is enough if the evidence tends to show that the crime was committed, the only question being whether the evidence of corpus delicti is prima facie sufficient to authorize the admission or the confession. Frazier v. State, Fla., 107 So.2d 16. See also Holland v. State, 39 Fla. 178, 22 So. 298. In the instant case, counsel for the defendant has conceded that this requirement regarding proof of corpus delicti was established at the trial.
The second requirement regarding corpus delicti is that at the conclusion of all the evidence in a particular case there must be proof beyond a reasonable doubt of the essential elements of the corpus delicti. Lee v. State, supra; Hulst v. State, supra. This, of course, is a question for the jury upon proper instructions from the trial judge, and in making this determination they are permitted to consider all the evidence in the case the only limitation being that a confession or admission standing alone is insufficient to prove the corpus delicti. 13 Fla.Jur., Evidence, Section 430 and cases cited therein.
It is with regard to this second aspect of corpus delicti that the defendant attacks the validity of the judgment of the lower court. It is his contention that in a first degree murder case the independent proof of "the criminal agency of another" must include proof of either actual premeditation or of the commission of one of the enumerated felonies which would justify conviction of first degree murder without premeditation.
We are unable to agree with this contention. Evidence of "criminal agency of another", as that phrase applies in connection with corpus delicti in homicide cases, means evidence which tends to show that the deceased died, not as the result of natural or accidental causes, or by his own hand, but by the hand of another under such circumstances that the killing *136 would amount to homicide in any of its degrees. In short, we do not believe that there is any requirement in a case of first degree murder that there be proof aliunde a confession or admission of the defendant that the killing was premeditated or that it was committed in the perpetration or attempted perpetration of any of the felonies enumerated in Section 782.04, F.S.A.
The precise point involved here was raised and disposed of in a learned opinion by Chief Justice Cardozo in the case of People v. Lytton, 257 N.Y. 310, 178 N.E. 290, 291, 79 A.L.R. 503. In that case the following language appears:
"The defendant insists that upon a trial for homicide perpetrated in the commission of another and independent felony * * *, a confession is insufficient evidence to sustain a conviction, though there is corroborating evidence of the fact of the homicide, unless there is also corroborating evidence, i.e., evidence apart from the confession, of the independent felony, and that the trial judge erred in charging to the contrary.
"The charge is in accordance with the settled doctrine of this court * * *".
The court went on to hold that if the corroborating evidence is sufficient to confirm the confession of a homicide there is no requirement that it also confirm the confession of a homicide in any particular degree. It has been noted that in New York the requirements as to corroboration of an extra-judicial confession have been placed in statutory form. Nevertheless, it appears that the statutes are generally in line with the law of this state concerning the same subject.
It remains only to determine whether the evidence as set out previously, apart from any confession or admission of the accused, is sufficient to satisfy the requirements of corpus delicti as we have defined them. The witness Nolin testified that he observed the defendant's automobile drive away from the service station. Immediately thereafter he discovered that there was no one in attendance at the station. Within a short time the defendant, driving the same car that had pulled out of the station, was apprehended by another officer. The deceased was in the car and still alive at the time, although mortally wounded by a bullet wound in his neck. He was heard to say, "Help me, Mister, he has shot me", and also that he had given the defendant all his money and had begged him not to shoot him. There was testimony as to the identity of the deceased, and it was proved by expert medical testimony that the bullet wound was the cause of death. All of this evidence was produced apart from any confession or admission of the defendant. We are convinced that it is sufficient to satisfy the requirements of proof of corpus delicti.
We have, moreover, reviewed the entire evidence as required by Section 924.32, F.S.A., and it is our opinion that the interests of justice do not require a new trial. Indeed, regarding the sufficiency of the evidence, it appears that the defendant in his sworn testimony, judicially admitted facts sufficient to warrant his conviction of murder in the first degree. It is well settled that the accidental discharge of a defendant's gun during the course of a robbery, resulting in the death of the victim, constitutes murder in the first degree. 40 C.J.S. Homicide § 32. Additionally, it appears clearly from the record that the gunshot wound was inflicted in the perpetration of the robbery, even though the money had already been seized by the defendant a short time before. At the time the fatal shot was fired, the decedent was still a prisoner of the defendant, being held for the purpose of concealing the commission of the robbery. Under such circumstances, the so-called felony-murder rule is applicable because the killing is a part of the same transaction as the felony. In 1 Warren, Homicide, page 332, the rule is stated thus:

*137 "Whether the felony was technically completed, is not of itself sufficient to take the case out of the category of felony murders. It is a homicide committed during the perpetration of a felony, if the homicide is part of the res gestae of the felony."
See also Frazier v. State, Fla., 107 So.2d 16, 20.
It follows that the judgment and sentence of the court below were without error and therefore must be affirmed
It is so ordered.
THOMAS, C.J., ROBERTS, THORNAL and O'CONNELL, JJ., and WILLIS, Circuit Judge, concur.
DREW, J., dissents.
DREW, Justice (dissenting).
In Brown v. State, Fla. 1960, 124 So.2d 481, 487, the defendant had been indicted for murder in the first degree but convicted of murder in the second degree. In a dissenting opinion I expressed the view that:
"* * * For a court to instruct a jury in positive terms, as was done here, that they did not have the power to find a defendant charged with murder in the first degree guilty of murder in the third degree is a plain and gross error of incalculable harm in the eyes of the law to the defendant and one which should be considered by an appellate court on review even though it be presented for the first time in that court or be discovered by that court in its examination of the record."
In the instant case, in which this defendant, indicted for murder in the first degree, has been convicted of that offense without a recommendation of mercy and sentenced to death by electrocution, the trial judge, as in the Brown case, not only failed to charge the jury on murder in the third degree as required by the statute[1] but, after the jury had deliberated for some time and returned to the court room, advised the jury that murder in the second and third degree was not applicable. This statement was made to the jury by the trial court when he furnished the jury a copy of his instructions but admonished them:
"* * * There is part of one instruction marked out and not given and I will ask you gentlemen not to read that part, and there is another one there that is with reference to murder in the second and third degree, which is not applicable." (Emphasis supplied.)
Section 924.32, F.S.A., was not applicable in our consideration of the Brown case. In the main opinion of this case, however, because it is one where the supreme penalty has been imposed, we recite that:
"We have * * * reviewed the entire evidence as required by Section 924.32, F.S.A., and it is our opinion that the interests of justice do not require a new trial."
It would serve no useful purpose to reiterate here the views expressed in my dissent in the Brown case. I adopt them, however, as my views in this case. My conviction there is strengthened by the requirements of the foregoing section relating to our consideration of cases on review where the supreme penalty has been imposed. I am convinced that not only the ends of justice but the requirements of due process require a new trial.
NOTES
[1] Section 919.14, Florida Statutes (1959), F.S.A., provides:

"919.14 Determination of degree of offense.  If the indictment or information charges an offense which is divided into degrees, without specifying the degree, the jurors may find the defendant guilty of any degree of the offense charged; if the indictment or information charges a particular degree the jurors may find the defendant guilty of the degree charged or of any lesser degree. The court shall in all such cases charge the jury as to the degrees of the offense."