152 So.2d 731 (1963)
Raymond Alexander SCHNEIDER, Appellant,
v.
The STATE of Florida, Appellee.
No. 31840.
Supreme Court of Florida.
April 3, 1963.
Rehearing Denied May 20, 1963.
*732 Blank & Davis, John R. Williams, West Palm Beach, J. Robert McClure, Jr., and Parker, Foster & Madigan, Tallahassee, for appellant.
Richard W. Ervin, Atty. Gen., and James G. Mahorner, Asst. Atty. Gen., for appellee.
THOMAS, Justice.
The trial of Raymond Alexander Schneider on a charge of murder in the first degree culminated in a verdict of guilty without recommendation of mercy, and from the ensuing judgment adjudicating his guilt and sentencing him to death in the electric chair he has appealed to this court.
The appellant was apprehended in Martin County several hours after one Roger S. Hendry was found on a street in Lake Worth, Palm Beach County, with bullet wounds in his head and neck from which he soon died.
The first question posed for our consideration is a challenge of the use at the trial of certain evidence obtained at the time of appellant's arrest when, so he asserts, he was subjected to physical abuse. Elaborating, it is said in appellant's behalf that at the time he was stopped by officers no warrant had issued for his arrest and the "officers had no idea of any offense the accused may have committed." Continuing it is represented that while held at the point of a gun in the dark he was assaulted by one of the officers without reason or provocation.
We go now to the record to ascertain just what had happened. Following an emergency call, a lieutenant of police in Lake Worth went to a designated place nearby where he was met by another police officer and two firemen. An automobile was parked on the curb and in it sat a man, immediately identified as Roger Hendry, who was bleeding freely from a wound in his face. He was sent straightway to a hospital.
The lieutenant stayed in the area for a while interviewing onlookers who had forgathered and might have information about the tragedy, listing their names and directing them to police headquarters. He ordered the car "sealed" to preserve any evidence, such as fingerprints, that might be present.
At the hospital a lead bullet was removed from the victim's head and one was taken from his neck. The first of these was fatal.
After the homicide the appellant appeared in the city of West Palm Beach where he forced his way into a parked car occupied by a man and his woman companion Holding a gun on the man he made him drive some distance to the Jewish synagogue where he soon released the couple with the warning not to report anything to the police. He next approached another car close by occupied also by a man and woman. Displaying a gun he entered the car, then at the entreaty of the man let the woman leave. He forced the man to start driving and after travelling a considerable distance evidently in a northerly direction, he accepted five dollars from the driver, released him and disappeared with the automobile bearing a Massachusetts tag which the driver seemed willing to surrender to put an end to an obviously unpleasant, if not potentially dangerous, episode.
The car was next seen in Martin County, to the north, where it was identified by a deputy sheriff whose radioed request for assistance was answered by another deputy. The two deputies gave chase for five miles *733 at the speed of 85 to 95 miles an hour with sirens sounding and red lights flashing. During the pursuit the appellant by zigzagging forced one of the deputies off the road with the result that this car was wrecked. Another deputy meanwhile joined the chase; after one of the deputies shot three time striking the appellant's car once he was seen to throw out an object, then he stopped. The appellant was immediately `frisked' and handcuffed.
While the deputies and the appellant were standing beside the car, one of the deputies slapped the appellant. The reason for the blow is not too clear but it was testified that it was administered by the deputy whose car had been wrecked by the purposely erratic driving of the appellant. It was this occurrence which the appellant now insists vitiated the arrest and the evidence obtained as an incident to it.
After the apprehension of the appellant the officers found a.22 calibre pistol about 200 yards south of the place where the appellant's and the deputies' cars had come to a halt. When the appellant was subsequently taken to the sheriff's office there was found on his person a receipt showing the purchase by him of the identical weapon from a merchant in Oaklawn, Illinois, and also taken from his was a quantity of .22 calibre cartridges. Not only had the appellant been seen to throw an object from the car but he remarked to the officers that he had done so and was walking back down the highway with them when it was found.
An expert in ballistics whose qualifications were conceded testified without equivocation that the bullets removed from the head and body of the victim were fired from the gun that had been tossed from his speeding car by the appellant and discovered on the roadside soon after his capture.
After these facts had been related the court conducted an inquiry into the circumstances surrounding a confession by the appellant. There was no charge that it was induced by fear, coercion or promise of reward; on the contrary, it was conceded by counsel for the appellant that it was freely and voluntarily given.
Before making his statement the appellant was fully advised of his right to speak or to decline and warned that anything he said could be used against him in the event of his trial for the homicide of Roger S. Hendry the preceding evening.
As reflected by the statement appellant was roaming the street when he saw his eventual victim get out of his car and enter a tavern. The appellant then got in the rear of the car to await the driver's return. In 15 or 20 minutes the driver came back and began driving away. The appellant got up and he thought that in doing so Hendry felt the pressure against the front seat. Hendry turned around and hit appellant's hand causing the gun accidentally to discharge  three times. Appellant denied that he was attempting to get money but admitted he was "trying to get his [Hendry's] car." He admitted the gun was his and that he had purchased it in Oaklawn, Illinois. Furthermore, he identified the receipt found on his person as the one given him by the seller of the gun in Illinois. Parenthetically, it is apparent from certain inconsequential changes of words made by the appellant in the transcription of the reporter that the appellant read the paper carefully.
The rest of his story in respect of forcing the man and woman to transport him for a while then entering a second car which the driver surrendered to him, speeding along the highway until he was stopped by the officers, throwing the pistol from the car just before he was halted and being present with the officers when it was retrieved corresponded in essential details with the accounts of the witnesses we digested at the outset.
In brief, his excuse for his act, or explanation of it, was that he wanted to seize his victim's car and that the gun discharged accidentally when the victim struck it with his hand.
*734 We revert now to the first question posed by the appellant, namely, whether "physical abuse at the time of arrest" vitiated the evidence there obtained. We must answer in the negative. Although we do not sanction an officer's striking a prisoner unnecessarily we can fully understand the exasperation that was generated in the deputy who was forced from the road by the intentional zigzagging of appellant's car while both were travelling at extremely high speed with the result that the deputy's car was wrecked although he escaped with his life. The presence of other officers, the circumstances surrounding the arrest and the apparent cooperation of the appellant in locating the gun, the presence of the appellant in an automobile he had seized at the point of a gun all seem to belittle the claim that because one officer, who had just escaped becoming a victim of the appellant's intended wild driving slapped the appellant in fit of anger, the evidence procured at the scene of the capture was so contaminated as to be inadmissible. There was ample evidence to justify appellant's arrest and none to support any theory that the blow was delivered to coerce a confession or to force an illegal search.
The appellant next contends that the corpus delicti was not fully established before his "statements" were admitted. There are three components of the body of the crime of murder, or corpus delicti: the death, the identity of the deceased and the criminal agency. And the evidence need not establish them beyond a reasonable doubt but only tend to show them as a prerequisite to introduction of a confession. Jefferson v. State, Fla., 128 So.2d 132.
In this case there was abundant evidence of the death and identity of the victim, and, we think, of the criminal agency as well. It appears to be the appellant's position that this element, of criminal agency, was not established because there was no evidence independent of the confession that any robbery was actually attempted. Obviously, Roger S. Hendry did not die from natural causes, or by accident or by suicide. He was shot from the rear or side by someone at his back and proof of this sufficed to establish the criminal agency regardless of the eventual statements in the confession that appellant proposed only to take the victim's automobile, and that the discharge of the pistol was accidental.
We reject the appellant's second contention and pass to his third. He insists that too much emphasis was placed by court and prosecutor on an attempted robbery as an element of the homicide and too little on other crimes "such as larceny, which * * * could readily remove the case from the category of murder in the first degree." He charges that the court elaborated on the crime of robbery although there was but one reference to it in the record, and that was in the appellant's "statement". Further, he complains that the court made but a brief reference to murder in the third degree and none at all to larceny and other offenses. To give any weight to this contention it would be necessary to accept the premises that he accidentally shot the driver three times while concealed in the back of his car and that he entertained no intention to rob but only to steal so the offense was murder in the third degree. The position is too tenuous to warrant approval by this court.
We are unable to follow appellant's argument that the court was obligated to define to the jury the offense of larceny or "other enumerated offenses which could, under the facts of the case, constitute lesser offenses." The record does not reveal any request for definitions of lesser offenses and the statute, Sec. 782.04, Florida Statutes 1961, F.S.A., does not enumerate any crimes during the commission of which a homicide shall constitute murder in the first degree except arson, rape, robbery, burglary, crime against nature and kidnaping. Homicide when committed by one engaged in any other felony is murder in the third degree, but we will not explore every facet of the facts we have recounted to determine *735 whether or not some element of some felony other than the ones detailed was present, and we think there was no occasion for the trial judge to do so.
The appellant mentions only one of these other offenses, larceny, but it is obvious to us that if, when appellant dispatched Hendry, he intended to take his car he was attempting to commit robbery, not larceny.
We have examined carefully the charges to the jury given by the trial judge and have found them to be correct. He followed faithfully the language of the statute in defining murder in the first, second and third degrees. The appellant was charged in the indictment with shooting Hendry with a pistol intending to kill him. The judge meticulously differentiated between murder in the first degree and murder in the third degree and the jury by adhering to his charges could not have formed any opinion but that the defendant, if proven guilty beyond a reasonable doubt of killing Hendry from a premeditated design to effect his death or while perpetrating any one of the felonies we have named, could be found guilty of murder in the first degree, while if proven guilty beyond a reasonable doubt of the homicide while engaged in the commission of any felony other than those detailed could be convicted of murder in the third degree.
Furthermore, the judge carefully distinguished murder in the first degree committed with a premeditated design to kill and murder in that degree perpetrated while committing or attempting to commit the graver felonies. True, he defined robbery as he should have done under the facts developed in the trial. He concluded the charge by telling the jury the defendant could be found guilty of murder in the first degree, murder in the second degree, murder in the third degree or manslaughter, or could be acquitted, and furnished them a form for each of such verdicts.
The appellant has linked the prosecutor with the judge in his complaint that undue emphasis was placed on the subject of robbery. We have examined the relevant record to which we have been referred but have not found in the colloquy among the court and counsel any comment indicating prejudice or justifying our disturbing the judgment on this score.
In the same exchange of remarks appears one by counsel for the State that the deceased "had his head blown off" whereas he had been shot only in the head and neck. This variance would not take one to the wrong conclusion relative to guilt or innocence of the defendant. The point was that the wounds inflicted took the victim's life even though he was not decapitated.
Finally, the appellant complains about the remarks of the judge to the jury after they had been deliberating for about six and a half hours. He told them, in effect, that a juror should not from pride of opinion hastily formed refuse to agree with his fellow-jurors; that it was their duty to agree if that could be done without violence to conscientious convictions. He asked them to resume their discussion of the case assuring them that, if the court could, he would be glad to assist them by further exposition of the law. We think no harm was done the appellant in this regard. This language was completely justified under decisions of this court rendered in Sigsbee v. State, 43 Fla. 524, 30 So. 816, and Nelson v. State, 148 Fla. 338, 4 So.2d 375.
As we are obligated to do by Sec. 924.32, Florida Statutes 1961, F.S.A., we have reviewed the evidence in this case to determine whether or not the interests of justice require a new trial and we conclude that they do not.
The judgment is affirmed.
ROBERTS, C.J., and TERRELL, THORNAL, CALDWELL and SEBRING (Ret.), JJ., concur.