184 So.2d 217 (1966)
Bertha Mae SIMS, Appellant,
v.
STATE of Florida, Appellee.
No. 6012.
District Court of Appeal of Florida. Second District.
March 9, 1966.
Rehearing Denied April 1, 1966.
*218 Jack F. White, Jr., and Robert E. Pyle, Asst. Public Defenders, Clearwater, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and Robert G. Stokes, Asst. Atty. Gen., Lakeland, for appellee.
SHANNON, Acting Chief Judge.
This is an appeal by a defendant from a conviction of second degree murder entered upon a jury verdict. We summarize the four points raised on appeal as follows: 1) Did the court err in excusing, on its own motion, seven prospective jurors in a first degree murder trial on the basis of their conscientious beliefs regarding the death penalty? 2) Did the court err by engaging in rather extensive questioning of one of the State's witnesses? 3) Did the State establish, by sufficient evidence, the elements of the corpus delicti? 4) Should the court have required that certain memoranda referred to by State's witnesses be introduced into evidence rather than allowing them to be used to refresh recollection? These points will be taken up in order.
The appellant was indicted for first degree murder, an offense punishable by death. Fla. Stat., Sec. 782.04, F.S.A. During the voir dire the trial judge explained the consequences of a guilty verdict, and made the following statement:
"THE COURT: You will recall, or you may not know, if you do find the Defendant guilty of first degree murder, you have the right to recommend clemency and if a sufficient number of you recommend this mercy, the death penalty is not inflicted, but if you have the conscientious belief the death penalty is so bad it ought never be inflicted " (Emphasis added).
Three prospective jurors affirmatively replied and were excused by the court. Later this colloquy took place.
"* * * It is up to the State to prove the Defendant guilty beyond and to the exclusion of every reasonable doubt, so the mere fact you are sitting on this case does not necessarily mean you will have to find the Defendant guilty without recommendation of mercy, but there is a possibility that the evidence will justify you so finding and that the evidence should justify the finding of guilt of first degree murder without recommendation of mercy, and would any of you hesitate to bring in such a verdict merely because of some philosophical or moral or ethical disbelief in the death penalty?
"PROSPECTIVE JUROR NO. 3: I don't think I could go along with it.
"THE COURT: You don't believe you could?
"PROSPECTIVE JUROR NO. 3: No.
"THE COURT: Even though the evidence justified it under the law?
"PROSPECTIVE JUROR NO. 3: I don't think I could live with myself.
"THE COURT: Well, we will excuse you, then.
"PROSPECTIVE JUROR NO. 11: Mandatory death? I can't 

*219 "THE COURT: You have a right to bring in the recommendation of mercy which the Court has to follow. The Court must follow it and cannot accord the death penalty, but that is if the Jury feels the circumstances warrant a recommendation, but if you should find the Defendant guilty of first degree murder and did not feel that mercy was recommended, would you feel you could not vote for first degree murder under those circumstances?
"PROSPECTIVE JUROR NO. 11: I believe I could not.
"THE COURT: You believe you could or could not?
"PROSPECTIVE JUROR NO. 11: Could not.
"THE COURT: You may be excused.
"MR. DONAHEY: Mr. Glenn, I believe you raised your hand also.
"PROSPECTIVE JUROR: I couldn't vote for it either.
"THE COURT: Is there anyone else that has such a compunction you feel you could not serve on a case involving a first degree murder death penalty? All right, sir, you may be excused."
The final juror excused on this ground stated the following:
"Your Honor, I don't believe God gives me the right to set in judgment of any person's life and I could not render a decision on this one."
Appellant claims these excusals were improper because the judge acted on his own, before giving the attorneys an opportunity to examine and challenge the jurors, which procedure resulted in a systematic exclusion of a segment of the community from the jury. Appellant argues that the jurors who were eliminated were not legally disqualified and their exclusion as a class violated fundamental rights guaranteed by both the Florida and Federal Constitutions.
"No person whose opinions are such as to preclude him from finding any defendant guilty of an offense punishable with death shall be allowed to serve as a juror on the trial of any capital case." Fla. Stat., Sec. 932.20, F.S.A.
This disqualification is statutory, and it is altogether proper for a trial judge to take the initiative in determining which jurors fail the standard. Cf. Mims v. State, 1900, 42 Fla. 199, 27 So. 865. Moreover, the determination of juror qualifications is a function of the trial judge, whose decisions in this area are largely discretionary. Russom v. State, Fla.App. 1958, 105 So.2d 380, 382; Adams v. Elliott, 1937, 128 Fla. 79, 174 So. 731. The Florida Supreme Court set out the general rule applicable here in Piccott v. State, 1959, 116 So.2d 626, 627, appeal dism., cert. den., 364 U.S. 293, 81 S.Ct. 106, 5 L.Ed.2d 83:
"As stated by this Court in Singer v. State, Fla. 1958, 109 So.2d 7, competency of a challenged juror is a question of mixed law and fact to be determined by the trial judge in his discretion and the decision of the trial judge will not be disturbed unless the error is manifest. Seldom, if ever, will excusal of a juror constitute reversible error for the parties are not entitled to have any particular jurors serve. They are entitled only to have qualified jurors. No complaint is made here that the jurors who served were not qualified."
In Piccott, supra, a prosecution for rape, the issue was whether the trial judge erred in excusing, upon challenge for cause by the State, nine jurors who had stated opposition to taking life in punishment of crime, but who all had indicated they could render a guilty verdict upon the condition that it be accompanied by a recommendation of mercy. Appellant's contention in Piccott was that a venireman meets the requirements of Fla. Stat., Sec. 932.20, F.S.A., if he asserts that he will, if the evidence warrants, return a guilty verdict in a capital case and that the question whether the *220 venireman would couple a recommendation for mercy with a vote of guilty was immaterial. The Supreme Court rejected this interpretation of the statute, saying:
"We think it clear that the statute must be construed to mean that only those persons who are not, by conscientious scruples, beliefs, convictions, or opinions, based on moral, religious, or other grounds, precluded from infliction of the death penalty as punishment for crime, shall be considered qualified to serve as jurors on trial of a capital crime." (Emphasis added). 116 So.2d at 628.
The appellant in the instant case makes much the same argument, by asserting that the trial judge erred by systematically excluding those having conscientious scruples against the death penalty, which scruples may not have been strong enough to prevent them from bringing back the death penalty if required by the law and facts. Appellant relies on Boyington v. State, 1917, 74 Fla. 258, 76 So. 774, in which the Florida Supreme Court held it was not error to deny the defendant's challenge to a venireman who had stated he had "conscientious scruples" against capital punishment. The Court stated that "conscientious scruples" were not equivalent to an opinion which would preclude the juror from finding a defendant guilty of a capital offense. Boyington, however, does not stand for the proposition that the trial judge would have erred had he allowed the challenge and dismissed the venireman from the panel, and for this reason we believe that the case is not controlling here.
Additionally, in light of the rationale expressed by the Supreme Court in the more recent Piccott decision, the pronouncements in Boyington do not compel us to reverse in this case. In Piccott we find the following language:
"Voir dire questions should be designed to determine that the venireman is capable of joining in a verdict which will result in taking the life of the accused if the evidence warrants, or, stated another way, that he is free of conscientious scruples, beliefs, convictions, or opinions which would preclude or prevent his joining in such a verdict, irrespective of the evidence." (Emphasis added). 116 So.2d at 629.
We do not believe that the jurors excluded by the trial judge in this case were of a mind that they could have brought in a verdict of guilty on the evidence presented without first requiring a recommendation of mercy. Such views are disqualifying under the test of the Piccott case. But even if this factual evaluation be erroneous, it was not necessary for the judge in this case to ascertain how pervasive was the jurors' disdain for capital punishment, once the view had been expressed that the death penalty ought never be inflicted. Psychosemantic gymnastics of the order required to separate these jurors' abhorrence of the death penalty from their ability to independently evaluate the evidence of guilt of a capital crime were neither realistic nor required. As the Supreme Court recognized in Piccott, it is not unlikely that a juror opposed to capital punishment would vote not guilty merely to avoid the death penalty if six other jurors refused to join in a recommendation of mercy. So although it is true that in this case the excused jurors were not examined in detail as to whether their consciences would preclude their voting guilty unless coupled with a recommendation for mercy, yet we find from their answers sufficient grounds for the trial judge, in his discretion, to have excused them. The question of mercy should only be injected after the venireman indicates he can and will determine guilt of a capital crime according to the evidence. Piccott, supra, 116 So.2d at 629. For these reasons, plus the appellant's failure to demonstrate how the exclusion of these seven prospective jurors operated to his prejudice, we affirm as to the first point on appeal.
Appellant's second point concerns the rather extensive questioning of one of *221 the State's witnesses by the trial judge. Appellant contends this drew undue attention to the witness, and cast some aspersions before the jury regarding the conduct of appellant's trial counsel. After carefully examining the transcript we fail to find any support for this argument. The trial judge may have asked the witness as many questions as either of the attorneys, but this numerical equality standing alone does not demonstrate error. See Younghans v. State, Fla.App. 1957, 97 So.2d 31. Nor does the record disclose any hint that the trial judge departed from the strict neutrality required of his position. His questions were short, pertinent, and precise. Neither any single question, nor the total effect of all of them, could be construed as a comment on the evidence.
Appellant's third point is that the trial judge should have directed a verdict for the defendant because the State failed to prove the corpus delicti beyond a reasonable doubt.
The three elements which Florida courts recognize as essential to proof of the corpus delicti in a homicide case are: 1) the fact of death; 2) the criminal agency of another person as the cause of death; and 3) the identity of the deceased. Hulst v. State, 1936, 123 Fla. 315, 166 So. 828; Lee v. State, 1928, 96 Fla. 59, 117 So. 699; Jefferson v. State, Fla. 1961, 128 So.2d 132. In Jefferson, supra, the Florida Supreme Court clearly enunciated the distinction between the quantum of proof required to establish the corpus delicti prior to introducing an extrajudicial confession or admission of the defendant as opposed to the proof necessary to allow the entire case to be submitted to the jury:
"In dealing with cases of homicide involving an issue of corpus delicti, it is necessary to remember that the term corpus delicti encompasses a dual aspect. On the one hand, there is the requirement that there be sufficient evidence introduced by the State tending to prove the three essential elements of corpus delicti before the jury will be permitted to consider any admission or confession of the defendant. When the term is used in this sense there is no requirement for proof of the elements beyond a reasonable doubt. It is enough if the evidence tends to show that the crime was committed, the only question being whether the evidence of corpus delicti is prima facie sufficient to authorize the admission or the confession. * * *
"The second requirement regarding corpus delicti is that at the conclusion of all the evidence in a particular case there must be proof beyond a reasonable doubt of the essential elements of the corpus delicti. * * *" Jefferson, supra, at 135.
In the instant case, as in Jefferson, supra, we are not concerned with the prima facie showing necessary for the admission of a defendant's confession. The point raised by appellant is that the State failed to prove beyond a reasonable doubt two elements of the corpus delicti: 1) the fact of death; and 2) the identity of the deceased. The record, however, does not support this assertion.
Detective Homer G. Allen testified that he had been summoned to the scene of the shooting and had found Larry Albert lying on the ground; that he knew the deceased to be Larry Albert and had viewed the autopsy performed on the deceased by Dr. Donald L. Howie in Mound Park Hospital. He also identified two photographs taken by another policeman of a dead body as being the body of the person he knew as Larry Albert.
Dr. Donald L. Howie, a pathologist, testified that on May 21, 1964, he performed an autopsy on Larry Albert, at Mound Park Hospital, St. Petersburg, Florida. Dr. Howie stated that during the latter portion of the autopsy a police detective named Homer G. Allen was present; that he (Dr. Howie) removed four bullets from the body *222 of Larry Albert, which bullets were the cause of death.
Appellant claims this proof was insufficient because the State failed to show how either the doctor or the detective knew who Larry Albert was. The fallacy in this position is that it was incumbent upon the defendant, during cross-examination, to demonstrate that the witnesses did not actually know the deceased's identity. As the record stands, however, we have the uncontradicted and unimpeached testimony of two witnesses who stated they saw the body of the deceased and identified it as the same victim whom the appellant was charged with murdering. Moreover, the victim's own mother testified, without objection or contradiction, that she saw her son at Mercy Hospital after the shooting and that he was dead.
From this testimony we conclude that the trial judge properly submitted the case to the jury, there being ample evidence from which that group could conclude the corpus delicti had been established beyond a reasonable doubt. See Jefferson v. State, supra, and cases cited therein.
Appellant's final point is that the trial judge erred in allowing two witnesses to "read" from certain transcribed notes while testifying, without requiring the State to introduce these notes into evidence.
Dr. Howie and Detective Allen both referred to notes which they stated had been made contemporaneously with or shortly after the events recorded. Both stated they had an independent recollection of the events and details involved, but found it necessary to refer to their notes to refresh their recollections. In addition, both made their memoranda available to defense counsel for their use in cross-examination. Under these circumstances we find no error committed by the trial judge. See Volusia County Bank v. Bigelow, 1903, 45 Fla. 638, 33 So. 704.
Having considered the points raised by appellant, and additionally, having read the entire transcript in this case, we find that no reversible error has been committed. The decision of the lower court is therefore affirmed.
Affirmed.
LILES, J., and HEWITT, ROBERT S., Associate Judge, concur.