700 So.2d 634 (1997)
Darius Mark KIMBROUGH, Appellant,
v.
STATE of Florida, Appellee.
No. 84989.
Supreme Court of Florida.
August 21, 1997.
Rehearing Denied October 21, 1997.
*635 James B. Gibson, Public Defender and George D.E. Burden, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, for appellant.
Robert A. Butterworth, Attorney General and Mark S. Dunn, Assistant Attorney General, Tallahassee, for appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon Darius Mark Kimbrough. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Kimbrough was convicted of first-degree murder, burglary of a dwelling with a battery therein, and sexual battery with great force and was sentenced to death consistent with a jury recommendation of eleven to one. The victim, Denise Collins, was found nude and semi-conscious in her bathroom by paramedics; she was covered with blood. The sliding glass door to her second floor apartment was partially open, and there were some ladder impressions under the balcony. Collins was rushed to the hospital, where she died soon thereafter.
The officers took semen evidence from the bedsheets, took blood evidence from the victim, and found pubic hairs in the bed and in a towel. The samples were sealed in a bag and sent to the Florida Department of Law Enforcement lab for analysis.
A resident of the apartment complex Leetold officers that he had twice seen a man in the vicinity of the apartment and had seen a ladder on the apartment's balcony. Officers were unsuccessful in searching for the man, but later Lee identified Kimbrough from a picture lineup. A workman in the complexStoneidentified Kimbrough as a man who had watched him putting away a ladder in the complex around the time of the murder.
The DNA evidence showed that the semen taken from the bedsheets was compatible *636 with Kimbrough's, and some of the pubic hairs matched his. There were, however, additional pubic hairs from another unidentified black man and a caucasian male. The DNA evidence indicated that the blood samples taken from the bed matched Kimbrough's.
The medical examiner testified at trial that the victim had a fractured jaw and fracturing around her left temple. The cause of death was hemorrhaging and head injury in the brain area resulting from blunt injury to the face. There was also evidence of vaginal injury, including tears and swelling consistent with penetration. There were bruises on her arms.
The defense's theory suggested that the victim's ex-boyfriendGary Boodhoohad committed the crime since he was with the victim shortly before, had used a ladder before at her apartment, had a key, and had beaten her previously. The evidence of prior beating was excluded.
In the sentencing order, the judge listed three aggravators: prior violent felony, committed during the course of a felony, and heinous, atrocious, or cruel (HAC). To support the prior violent felony aggravator, the judge cited Kimbrough's prior convictions for both burglary of a dwelling with battery therein and sexual battery. The court found that the murder here was committed during sexual battery or attempt to commit sexual battery, citing DNA evidence and bruising, as well as evidence that the victim and defendant did not know each other. HAC was supported by the size of the victim, the three blows to her head causing fracture by blunt force, evidence of a struggle (the room was in disarray), and the amount of blood found around the room.
The judge considered age as a statutory mitigator (Kimbrough was nineteen), but rejected it because there was no evidence establishing that he was immature or impaired. The court considered the following nonstatutory mitigation: Kimbrough had an unstable childhood, maternal deprivation, an alcoholic father, a dysfunctional family, and a talent for singing. The court found that the mitigation did not temper the aggravators.
Kimbrough presents eight issues on appeal: (1) the evidence was legally insufficient to support the verdict; (2) it was error to prohibit introduction of defense testimony about other crimes or bad acts; (3) it was an abuse of discretion for the judge not to find the statutory mitigator of age at the time of the offense; (4) the death sentence was disproportionate and there was an improper weighing of mitigators; (5) there was an erroneous instruction on and finding of HAC; (6) it was error to excuse for cause one qualified juror over defense objection; (7) it was error to find that the murder was committed during sexual battery; and (8) section 921.141, Florida Statutes (1993), is unconstitutional. We find no merit to Kimbrough's arguments.
We have conducted an independent review of the entire record before us, and find competent and substantial evidence to support the juries' verdict and sentence. We therefore reject Kimbrough's contention in issue 1 that the evidence at trial was legally insufficient to support the verdict, but we briefly address three of the points he raises in this issue: Kimbrough argues that the evidence was insufficient because it was all circumstantial, that the DNA evidence was inadmissible for lack of a proper Frye inquiry,[1] and that there was insufficient evidence of premeditation.
We have established that circumstantial evidence is not a bar to conviction:
Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence. The question of whether the evidence fails to exclude all reasonable hypotheses of innocence is for the jury to determine, and where there is substantial, competent evidence to support the jury verdict, we will not reverse.
State v. Law, 559 So.2d 187, 188 (Fla.1989) (citations omitted). There is substantial, *637 competent evidence supporting the jury's guilty verdict.
Kimbrough's argument that the DNA evidence is inadmissible is also without merit. In Correll we wrote:
[W]hen scientific evidence is to be offered which is of the same type that has already been received in a substantial number of other Florida cases, any inquiry into its reliability for purposes of admissibility is only necessary when the opposing party makes a timely request for such an inquiry supported by authorities indicating that there may not be general scientific acceptance of the technique employed.
Correll v. State, 523 So.2d 562, 567 (Fla. 1988); see also Henyard v. State, 689 So.2d 239, 248 (Fla.1996); Washington v. State, 653 So.2d 362, 365 (Fla.1994); Robinson v. State, 610 So.2d 1288, 1291 (Fla.1992). Here, there was no timely request for an inquiry as required by Correll. Thus, we find no abuse of discretion in allowing the evidence at trial.
Kimbrough also argues that there was insufficient evidence of premeditation. The jury was instructed on both premeditated and felony murder. Also, the judge specifically ruled that the allegations were sufficient to support either charge. The circumstances surrounding this killing provide ample evidence in support of either theory upon which the jury could have based its verdict. We find no merit to this argument.
Kimbrough's contention in issue 2 is that the trial judge erred by prohibiting defense testimony about other crimes or bad acts committed by Boodhoo, the victim's ex-boyfriend. Kimbrough sought to introduce evidence that Boodhoo had beaten the victim during the course of their relationship. The defense argued that it was relevant to the defense theory that Boodhoo had actually committed the murder, not Kimbrough. Kimbrough claims it was error to exclude the evidence, as it was properly within the scope of the Williams rule.
Evidence of other crimes or acts is admissible if it is found to be relevant for any purpose, save that of showing bad character or propensity. See Williams v. State, 110 So.2d 654 (Fla.1959); § 90.404, Fla. Stat. (1991). The State points to this Court's decision in State v. Savino, where we said:
When the purported relevancy of past crimes is to identify the perpetrator of the crime being tried, we have required a close similarity of facts, a unique or "fingerprint" type of information, for the evidence to be relevant.
State v. Savino, 567 So.2d 892, 894 (Fla. 1990); see also Drake v. State, 400 So.2d 1217, 1219 (Fla.1981)(holding that a general similarity is not enough to establish identity through this type of evidence; to be relevant facts must show points of similarity so unusual as to point to the defendant). Although in this case the evidence is "reverse Williams-rule evidence" (evidence offered by a defendant), it requires the same showing of relevance as evidence offered by the prosecution. See, e.g., Charles W. Ehrhardt, Florida Evidence § 404.9 at 157-58 (1996 ed.). The judge allowed substantial discussion of the issue (the issue takes up over thirty pages of the record), and ultimately concluded, "I don't think that's relevant enough. I don't think it's similar enough. I don't think there's anything about [the earlier incident] that even approaches this." The judge also considered the remoteness in time and place of the earlier incident alleged by the State. We find no abuse of discretion. This issue is without merit.
We reject Kimbrough's contention in issue 3 that it was error for the trial judge not to find Kimbrough's age as a statutory mitigator. We discussed the age mitigator in Ellis v. State, 622 So.2d 991 (Fla.1993). There we said:
Whenever a murder is committed by one who at the time was a minor, the mitigating factor of age must be found and weighed, but the weight can be diminished by other evidence showing unusual maturity. It is the assignment of weight that falls within the trial court's discretion in such cases.
Id. at 1001. Here, the defendant was not a minorhe was nineteen at the time of the offense. The trial court may find or decline to find age as a mitigating factor in respect *638 to a defendant who is nineteen depending upon the circumstances of the particular case. See, e.g., Merck v. State, 664 So.2d 939, 942 (Fla.1995); Peek v. State, 395 So.2d 492, 498 (Fla.1980). Thus, there was no abuse of discretion in failing to find the factor as a statutory mitigator here. This issue is without merit.
Kimbrough contends in issue 4 that his death sentence is disproportionate. There are three aggravators present: prior violent felony, committed during the course of a felony, and HAC. There was no statutory mitigation and weak nonstatutory mitigation. Kimbrough's death sentence is not disproportionate to other similar cases. See, e.g., Geralds v. State, 674 So.2d 96 (Fla.1996) (upholding the death sentence where there were two aggravators and weak mitigation); Taylor v. State, 630 So.2d 1038 (Fla.1993) (upholding the death sentence where there were three aggravators and evidence of mental retardation in mitigation). This issue is without merit.
Kimbrough's contention in issue 5 that the trial court erred both in instructing the jury on HAC and in finding the factor proven is without merit. The record contains voluminous evidence of suffering. The trial court gave extensive consideration to this factor in the sentencing order:
On October 3, 1991, the Defendant entered the second-story apartment of the victim, Denise Collins, as she lay in bed alone late at night. The victim was a 28-year old female, 5 feet 4 inches tall, 112 pounds who lived in that apartment alone. The evidence indicates that the Defendant used a ladder to climb onto the balcony and get through the sliding glass door. He raped Ms. Collins. She had contusions on her upper arms and left side of face. The evidence presented by the Medical Examiner, Dr. Thomas Hegert, was that there were a minimum of three blows to the head, one of which would have rendered her unconscious. Her skull was fractured by a blunt force. There was blood on the wall as well as the bed, the carpet, and numerous items strewn throughout the room indicating a struggle. The Medical Examiner could not say in what sequence the blows to her head were inflicted, but that the one that fractured her skull would have rendered her unconscious. If she were rendered unconscious immediately, perhaps this crime would not be so hideous. The Medical Examiner, naturally, cannot determine which blow was first because they were all too close in time; however, there is other evidence that this crime involved quite a struggle. There was blood all over the room. The victim was still alive when she was found by the paramedics on the floor. She even sat up at one point when law enforcement was there. She regurgitated. Heroic efforts were made to save her life; however she died at the hospital about 12 hours after the attack. There was semen found on the bottom sheet of Ms. Collins' bed. It was matched to the Defendant through DNA.
The last moments of Denise Collins['] life were a nightmare. First, she discovered a stranger in her bedroom, then she was raped by that stranger. After that she was beaten, and her head was banged against the wall. She had to be in unspeakable fear and pain. Although no exact time period over which this hideous crime occurred has been established, based on the activities that took place and the extent of blood splattered throughout the room it was not quick.
This is a thorough analysis supporting the factor, and clearly satisfies the standard Kimbrough himself quotes from Buenoano v. State: "[A] homicide is especially heinous, atrocious or cruel when `the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital feloniesthe conscienceless or pitiless crime which is unnecessarily torturous to the victim.'" 527 So.2d 194, 199 (Fla.1988) (quoting State v. Dixon, 283 So.2d 1, 9 (Fla.1973)). We find no error.
We disagree with Kimbrough's contention in issue 6 that the trial court erred in excusing a juror for cause over defense objection. The standard for determining whether a prospective juror may be excused for cause because of his or her views of the death penalty is whether the juror's *639 views would prevent or substantially impair the performance of his or her duties as a juror in accordance with the juror's instructions and oath. Castro v. State, 644 So.2d 987, 989 (Fla.1994). It is within the trial court's discretion to determine if a challenge for cause is proper, and a trial court's determination of juror competency will not be overturned absent manifest error. See Mills v. State, 462 So.2d 1075, 1079 (Fla.1985).
On her jury questionnaire, the prospective juror expressed strong reservations about her ability to be impartial as to the death penalty issue. During voir dire, she stated that she was personally acquainted with two people on death row: one was a former schoolmate, the other was the father of her oldest child. She repeatedly expressed uncertainty about serving on a death penalty case, and she said her relationship with the two death row inmates would make it difficult for her. At one point, the following exchange took place:
[Prosecutor]: Do you feel like you at this point can be completely fair and impartial in judging issues of the death penalty in Orange County having had a personal relationship with people who were [on death row]?
Juror: No. No.
[Prosecutor]: You don't think you can?
Juror: No.
Although the prospective juror did respond in the affirmative to a question by the defense attorney asking if she could follow the oath she would be administered and apply the law as instructed by the judge, she had clearly expressed uncertainty several times during the interview. Based on our complete review of the voir dire of this juror, we do not find that the trial court abused its discretion in excusing this juror for cause.
We reject Kimbrough's contention in issue 7 that it was error for the trial court to find that the murder was committed during the course of a sexual battery. Kimbrough makes two arguments: (1) there was no proof that a sexual battery occurred, and (2) there was no proof that the murder was committed during the sexual battery. Both of these arguments are without merit.
There is ample evidence that the sexual activity evidenced through the DNA samples was nonconsensual. There was evidence that Kimbrough snuck into the victim's apartment by using the ladder outside her balcony, there were multiple bruises all over the victim's body, there was vaginal injury, there was blood on her bed, there was blood on the wall and carpet of her bedroom, and there was evidence of a struggle throughout her apartment. There is ample evidence to support the conclusion that a sexual battery occurred. See Gilliam v. State, 582 So.2d 610, 612 (Fla.1991) (common-sense inference from the facts presented was that victim struggled with her assailant and suffered before she died, supporting HAC aggravator); Swafford v. State, 533 So.2d 270, 277 (Fla.1988) (the victim's mental state may be evaluated in accordance with a common-sense inference from the circumstances).
Kimbrough's argument that it is impossible to tell whether the murder actually occurred during the sexual battery is also without merit. The battery and the murder were clearly part of the same criminal episode. See Roberts v. State, 510 So.2d 885, 888 (Fla.1987) (Although "it is clear from the record that the murder did not occur `during' the actual sexual battery ... the murder ... and subsequent sexual battery and kidnapping... were part of the same criminal episode."); Jefferson v. State, 128 So.2d 132, 137 (Fla.1961) ("It is a homicide committed during the perpetration of a felony, if the homicide is part of the res gestae of the felony."). Because there was competent and substantial evidence to support this aggravator, we will not overturn the trial court's finding. See Swafford, 533 So.2d at 277 (When an aggravating circumstance has been established, "the finding should not be overturned unless there is a lack of competent, substantial evidence to support it.").
Finally, Kimbrough's contention in issue 8 that section 921.131, Florida Statutes (1993), is unconstitutional has no merit. We reject this claim without discussion. See, e.g., Foster v. State, 679 So.2d 747, 752 (Fla.1996).
Accordingly, we affirm the convictions and sentence.
It is so ordered.
*640 KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Frye v. United States, 293 F. 1013, 1014 (D.C.Cir.1923).