707 So.2d 813 (1998)
Russell CHAUDOIN, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 96-2736.
District Court of Appeal of Florida, Fifth District.
February 20, 1998.
Rehearing Denied April 7, 1998.
James B. Gibson, Public Defender, and Stephanie H. Park, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Carmen F. Corrente, Assistant Attorney General, Daytona Beach, for Appellee.
W. SHARP, Judge.
Chaudoin appeals his convictions for two counts of first degree murder and two concurrent *814 life sentences. He argues that the trial court erred by allowing the jury to consider evidence Chaudoin committed collateral crimes (cattle theft), that the trial court erred by preventing defense counsel from cross-examining a state witness concerning his past cooperation as a state witness in an earlier case, and that the trial court erred when it allowed the state attorney, during the rebuttal case, to impeach a defense witness with a prior statement without a proper foundation. We affirm.
It was established at the trial that Chaudoin was the foreman of the Seminole Woods Ranch, a 6,000-acre parcel of property owned by Ted and Althea Strawn. He was paid a small salary and was allowed to live on the ranch property. Ted had promised him a 68-acre tract to live on, for his retirement, and on December 29, 1993, Ted and Althea signed a deed purporting to convey to him and his wife the 68-acre tract.
In March of 1994, the Strawns' only daughter, Pat Doyle, and her husband, Jack, moved from California to Florida to care for the Strawns and to supervise the ranch operations. Althea was ill and Ted (who was nearly ninety-years-old) was blind.
Pat and Jack suddenly disappeared. It turned out that on June 13, they were shot and killed. They were found buried in a hay lot on the ranch, with hay bales piled on top of their graves. They were discovered missing on June 21, 1995. A search of the ranch began June 29th. On June 30th, the investigators received information from Ohio, which caused them to put Chaudoin under surveillance and to interview Danny and Shannon Nichols. Ultimately Chaudoin was arrested and charged with the murders.
Danny testified at trial that Chaudoin asked him to help move a red Isuzu Trooper to a secluded Flagler County area so that he could dispose of it. The Doyles had driven such a vehicle, but Danny testified he did not know that, at the time. Chaudoin drove the Trooper and Danny followed in his car. They left the Trooper and returned in Danny's car.
The next week, Chaudoin asked Danny to come back to the ranch. Danny drove Chaudoin to where the Trooper was hidden. Chaudoin went into the woods, exiting shortly. He had placed electrical tape on the bottom of his boots. Later, Danny led the police to where the vehicle was hidden.
A murder weapon was not recovered or identified. The Doyles had been shot with a shotgun. Spent casings were buried with the bodies and in the hay above the grave sites. Investigators searched Chaudoin's mobile home on the ranch, and found a large number of guns and ammunition, including a shotgun, and a 2/3 quarter-inch shotgun shell of the same type used to murder the Doyles. However, it could not be established that the shotgun pellets used to murder the Doyles, also came from the same box found in Chaudoin's home, or that they had been fired from the same gun.
Also presented at trial was evidence that in March of 1993, after requesting permission from a friend, Charles Simmons, Chaudoin sold 20 head of cattle, using Simmons' name. In February of 1994, without getting Simmons' permission, Chaudoin again sold cattle using Simmons' name. Another friend was surprised at the number of cattle being sold. When questioned as to why so many, Chaudoin answered: "They owe it to me."
Yelvington, a cattle hand, testified there were 400 head of cattle on the ranch and that 35 head were missing. The list of cattle sold by Chaudoin under Simmons' name roughly matched the missing cattle, with regard to weight and sex.
The evidence supported an inference that after discovering or suspecting the theft of cattle from the ranch, Pat Doyle confronted Chaudoin and threatened to go to the police. A witness testified that she overheard Pat Doyle state that they were going to confront Chaudoin "very soon." The Doyles said they wanted him off the ranch "immediately." Further, Pat had instituted a system to inventory the cattle, including marking each animal with a numbered ear tag, and preparing individual index cards on each, containing information concerning its age, sex, health and tag number. Although no other property (except for the Trooper) was taken from the ranch at the time of the murders, the cattle index cards were never found.
*815 In addition, the evidence disclosed that the Doyles refused to make good on the deed of the 68 acres to Chaudoin. At the time the senior Strawns signed the deed in 1993, they did not own all of the property conveyed. Pat, Jack and their children owned 30 to 40 percent. Jack told Chaudoin that his family would never sign the deed, and both sides consulted attorneys. This resulted in an ongoing feud over the 68-acre property.
Finally, other evidence established that the Doyles were shot and buried with money and jewelry on their bodies. Chaudoin had sufficient time and access to the hay barn to use the forklift and backhoe to dig the graves and cover them with fresh dirt and the bales of hay. Chaudoin told different people different stories as to the Doyles' whereabouts. He was angry because his movements around the ranch were being restricted by the Doyles. Chaudoin spoke of the Doyles in the past tense, prior to their bodies being found. He also threatened to get rid of the Doyles, and he thought the Doyles were going to fire him. After the murders, Chaudoin paid and delivered money to an individual to plant cocaine in Danny Nichols' vehicle, and then call police and have Danny arrested.
In his first point on appeal, Chaudoin claims it was error to permit evidence of the cattle theft because that evidence was not relevant to a material fact at issue in the murder case, and there was insufficient evidence that a cattle theft had occurred. The admission of irrelevant collateral crimes is presumed harmful error because of the danger the jury will consider the defendant's bad character or propensity to commit crimes, as evidence he committed the crimes charged. Straight v. State, 397 So.2d 903, 908 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981); Hawks v. State, 616 So.2d 1106, 1108 (Fla. 5th DCA 1993).
Although we agree the evidence concerning the cattle thefts was not admissible under the Williams Rule[1] as similar fact evidence, it was admissible and relevant to establish a motive for the murders. Chaudoin did not own any cattle, and cattle were missing from the ranch, yet he had sold cattle in another person's name. The facts that Pat Doyle had instituted a cattle-indexing system for the cattle on the ranch, and had restricted Chaudoin's activities on the ranch, raise inferences she suspected he had been stealing cattle from the ranch. Finally, disappearance of the cattle index cards following the murders is further evidence that the murders and cattle thefts were connected. See Craig v. State, 510 So.2d 857 (Fla. 1987). A trial court has broad discretion in determining relevance of such evidence, and its determination will not be disturbed on appeal, absent a showing of abuse of discretion. See § 90.402; Heath v. State, 648 So.2d 660, 664 (Fla.1994).
Chaudoin's second point on appeal is that the trial court refused to allow the defense to question Danny Nichols concerning a criminal prosecution in which he had received a light sentence for aggravated bank robbery (probation), by cooperating with the police and testifying against two codefendants who received 15 and 16 year terms in prison. Nichols, in this case, was not searched, investigated or charged with a crime.
The state opposed this line of questioning because the bank robbery had occurred in Texas 17 years ago. The trial court ruled that this evidence should not be used to impeach him and that it was too remote in time. Again, this is a discretionary ruling by the trial court. We do not think Chaudoin established on this record that the trial court abused its discretion by excluding this line of impeachment. In any event, it is not clear that such evidence would establish grounds to infer bias in this case on Danny's part. See Kimbrough v. State, 700 So.2d 634 (Fla. 1997); Stokes v. State, 658 So.2d 1159 (Fla. 2d DCA 1995); Traina v. State, 657 So.2d 1227 (Fla. 4th DCA 1995).
Finally, Chaudoin argues that the trial court allowed the state to improperly impeach Goble, a witness the defense had called *816 in its case, with a prior statement. In the defense case, Goble testified he would not misrepresent any material fact because of his friendship with Chaudoin. On rebuttal, the state called McDonald, an investigator, to elicit an oral statement made by Goble to McDonald that Goble did not believe Chaudoin killed the Doyles, but if he did kill them, they deserved it.
Chaudoin argues this was error because Goble was not given an opportunity to admit, deny or explain making the statement. Section 90.614(2) provides:
Extrinsic evidence of a prior inconsistent statement by a witness is inadmissible unless the witness is first afforded an opportunity to explain or deny the prior statement....
We agree. Goble should have been offered an opportunity to admit or deny making the comment. However, the statement was relevant because it tends to show bias in favor of Chaudoin. Thus, if error occurred, we conclude it was harmless based on the balance of the evidence submitted in this case. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
AFFIRMED.
DAUKSCH and THOMPSON, JJ., concur.
NOTES
[1] See Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959); § 90.404, Fla. Stat.