467 So.2d 781 (1985)
Robert ANDERSON, Appellant,
v.
The STATE of Florida, Appellee.
Nos. 82-1019, 83-1664.
District Court of Appeal of Florida, Third District.
April 16, 1985.
Rehearing Denied May 15, 1985.
*782 Bennett H. Brummer, Public Defender and Rory S. Stein, Asst. Public Defender, for appellant.
Jim Smith, Atty. Gen. and Calvin L. Fox, Asst. Atty. Gen., for appellee.
Before HUBBART, BASKIN and JORGENSON, JJ.
HUBBART, Judge.
The defendant Robert Anderson appeals from multiple judgments of conviction and consecutive fifteen-year prison sentences entered below on three counts of manslaughter by operating a motor vehicle while intoxicated [§ 860.01, Fla. Stat.(1981)] after an adverse jury verdict. While this appeal was pending, we relinquished jurisdiction to the trial court to allow the defendant to file and proceed on a post-conviction motion to vacate judgment and sentence pursuant to Fla.R.Crim.P. 3.850; the state appeals from an adverse final order entered by the trial court on this motion after a full evidentiary hearing conducted below. Both appeals have been consolidated, and for the reasons which follow, we affirm on the defendant's appeal and reverse on the state's appeal  thereby leaving intact the judgments of conviction and sentences entered below.

I
Turning first to the defendant's appeal, the sole error urged is the denial of the defendant's motion for judgment of acquittal made at the close of the state's case and renewed at the close of all the evidence. The defendant contends that his statement to the police  in which he admits driving the motor vehicle that caused the deaths in this case  was inadmissible in evidence at trial due to the state's failure to establish an independent corpus delicti of the crimes charged; that without his police statement the state admittedly had no case against him as to those crimes, and that, accordingly, a defense motion for judgment of acquittal should have been granted below. We have held, in effect, that it is proper to challenge the admissibility *783 of a defendant's statement to the police, based on insufficient independent proof of a corpus delicti, on a defense motion at trial for judgment of acquittal. Knight v. State, 402 So.2d 435 (Fla. 3d DCA 1981). The point on appeal, then, centers on the admissibility of the defendant's statement as against a no corpus delicti challenge asserted by the defendant.
The Florida Supreme Court has summarized the controlling Florida law on this subject in State v. Allen, 335 So.2d 823 (Fla. 1976), as follows:
"It is a fundamental principle of law that no person be adjudged guilty of a crime until the state has shown that a crime has been committed. The state therefore must show that a harm has been suffered of the type contemplated by the charges (for example, a death in the case of a murder charge or a loss of property in the case of a theft charge), and that such harm was incurred due to the criminal agency of another. This usually requires the identity of the victim of the crime. A person's confession to a crime is not sufficient evidence of a criminal act where no independent direct or circumstantial evidence exists to substantiate the occurrence of a crime. The judicial quest for truth requires that no person be convicted out of derangement, mistake or official fabrication.
This rule obviously does not require the state to prove a defendant's guilt beyond a reasonable doubt before his or her confession may be admitted. Indeed, as this Court has stated before, it is preferable that the occurrence of a crime be established before any evidence is admitted to show the identity of the guilty party, even though it is often difficult to segregate the two. The state has a burden to bring forth `substantial evidence' tending to show the commission of the charged crime. This standard does not require the proof to be uncontradicted or overwhelming, but it must at least show the existence of each element of the crime. The state's burden of proof `beyond a reasonable doubt' is a requirement to establish the defendant's guilt, not to authorize admission of his confession."
Id. at 825 (footnotes omitted). See also Ruiz v. State, 388 So.2d 610, 611 (Fla. 3d DCA 1980); McQueen v. State, 304 So.2d 501, 502 (Fla. 4th DCA 1974).
In the instant case, the state presented substantial direct and circumstantial evidence, apart from the defendant's statement, establishing the corpus delicti of the crime as charged, to wit: manslaughter by operating a motor vehicle while intoxicated, thereby rendering the defendant's statement to the police admissible in evidence. The state's evidence established that a truck, traveling south on a busy street at a high rate of speed in Miami, ran a stop sign at an intersection; that the truck struck a car traveling east in the intersection, causing the car to strike another car and killing the driver of the first car; that the truck took no evasive action prior to impact; that all three persons in the truck were thrown out as a result of the impact; that the defendant was found unconscious alongside the driver's side of the truck, and the other two occupants were found dead in front of the truck; that beer cans were strewn on the ground around the truck, and several more beer cans and a vodka bottle were found lying inside the truck; and that the defendant was taken to the hospital where a blood sample was taken from him two hours after the accident indicating a blood alcohol level of .22.
First, as to the manslaughter count involving the death of the driver of the first car struck by the "death truck," plainly there was abundant evidence, apart from the defendant's statement, establishing a corpus delicti of the crime charged. Clearly, this driver was killed due to the criminal agency of another by someone who was driving the "death truck" in an intoxicated state. The manner in which the truck was driven to the point of impact, plus the beer cans and vodka bottle later found in and around the truck, clearly show this. It was, of course, unnecessary to establish, apart from the above statement, that the defendant was the guilty party  i.e., the *784 driver of the "death truck"  in order to lay a predicate for the admission of this statement. State v. Allen, 335 So.2d at 825. Second, as to the remaining two manslaughter counts involving the deaths of the two occupants in the "death truck," the question is closer and more complicated; ultimately, however, we think the evidence was sufficient, apart from the defendant's statement, to establish a corpus delicti of these crimes as well. As to these deaths, it was essential to show on each count that the person allegedly killed was not the driver of the "death truck," for if he was, there would be no crime committed as the person allegedly killed would have merely killed himself. Here the evidence is substantial that in all likelihood neither of these occupants were, in fact, driving the "death truck," and did not kill themselves, because their bodies were found in front of the truck after the accident; the defendant, by way of contrast, was found lying near the driver's side of the truck. This shows that the defendant most likely had been driving the truck and that his two dead companions had not. Compare County of Dade v. Pedigo, 181 So.2d 720 (Fla. 3d DCA), cert. denied, 188 So.2d 817 (Fla. 1966) (defendant in an intoxicated state found leaning against car involved in an accident held sufficient showing of a corpus delicti in a DUI prosecution to admit defendant's statement that he was the driver of the said car). Moreover, there was abundant evidence, as indicated above, that the "death truck" had been driven to the point of impact by someone in an intoxicated state. The trial court, therefore, committed no error in admitting the defendant's statement in evidence on all three manslaughter counts and in denying defense motions for judgment of acquittal. See State v. Allen, supra.

II
Turning next to the state's appeal, the trial court granted the defendant's motion to vacate judgment and sentence under Fla. R.Crim.P. 3.850 on the ground that the defendant was not afforded effective assistance of counsel by his retained trial counsel below. The court reached this conclusion solely because the defense counsel did not properly object to, and failed to move for a mistrial, based on certain inflammatory comments made by the prosecuting attorney in his opening statement and closing argument to the jury.[1] The *785 court reasoned, in essence, that these comments were improper and highly prejudicial, that they likely affected the outcome of the case, and that the state had failed to rebut this showing in any way. The court therefore concluded that "the [d]efendant has met all four prongs of the test for ineffective assistance of counsel laid out in Knight v. State, 394 So.2d 997 (Fla. 1981)," and granted the defendant's motion to vacate.[2] We disagree and reverse.

A
One of the four essential elements under Knight which the defendant must prove in order to establish a claim of ineffective assistance of counsel, as a ground for collateral attack relief under Fla.R. Crim.P. 3.850, is stated as follows:
"Second, the defendant has the burden to show that [counsel's] specific omission or overt act was a substantial and serious deficiency measurably below that of competent counsel. As was explained by Judge Leventhal, in DeCoster III: `To be "below average" is not enough, for that is self-evidently the case half the time. The standard of shortfall is necessarily subjective, but it cannot be established merely by showing that counsel's acts or omissions deviated from a checklist of standards.' 624 F.2d at 215."
Knight v. State, 394 So.2d at 1001.
The United States Supreme Court in Strickland v. Washington, ___ U.S. ___, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), has laid down a virtually identical standard  see Jackson v. State, 452 So.2d 533 (Fla. 1984)  which the defendant must prove in order to establish a claim of ineffective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution:
"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment.
... .
When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.
... .
The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."
___ U.S. at ___, 104 S.Ct. at 2064, 2065, 80 L.Ed.2d at 693-94. The Court also sets out the basic analysis for determining whether counsel's performance fails to meet this standard:
"In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) (`The Defense Function'), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. See United States v. Decoster, 624 F.2d 196, at 208. Indeed, the existence of detailed guidelines for representation could distract counsel from the overriding mission of vigorous advocacy *786 of the defendant's cause. Moreover, the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial.
Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to secondguess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-134, 102 S.Ct. 1558, 1574-1575, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' See Michel v. Louisiana, supra, 350 U.S., at 101, 76 S.Ct., at 164. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. See Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N.Y.U.L. Rev. 299, 343 (1983).
The availability of intrusive post-trial inquiry into attorney performance or of detailed guidelines for its evaluation would encourage the proliferation of ineffectiveness challenges. Criminal trials resolved unfavorably to the defendant would increasingly come to be followed by a second trial, this one of counsel's unsuccessful defense. Counsel's performance and even willingness to serve could be adversely affected. Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client.
Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."
Id. ___ U.S. at ___, 104 S.Ct. 2065-66, 80 L.Ed.2d at 694-95.

B
The sole basis in this case for concluding that counsel's representation of the defendant constituted "a substantial and serious deficiency measurably below that of competent counsel," see Knight, supra at 1001, is that counsel failed to preserve for appellate review an otherwise reversible error, to wit: he failed to object and move for a mistrial based on the prosecutor's alleged improper comments made in opening statement and closing argument to *787 the jury.[3] Assuming without deciding that these comments would have constituted reversible error had the record been properly preserved below, we think counsel's failure to do so cannot, without more, satisfy this element of the aforesaid Knight-Strickland standard for ineffective assistance of counsel. We reach this conclusion for two reasons.
First, any different result would substantially undermine, if not utterly destroy, the preservation of error rule in Florida as applied to criminal cases. Compare Castor v. State, 365 So.2d 701, 703 (Fla. 1978). If counsel should fail, as here, to preserve for appellate review an otherwise reversible error, it would be of little moment as the conviction would still be subject to being vacated based on an ineffective assistance of counsel claim. The preservation of error rule would have no real consequence as it would apply only when counsel failed to preserve points which would not have merited a reversal in any event. In effect, a "wild card" exception to the preservation of error rule would be created allowing appellate courts to pass on the merits of unpreserved, non-fundamental errors in criminal cases, and to upset criminal convictions based thereon. See Cox v. State, 407 So.2d 633 (Fla. 3d DCA 1981). We cannot accept such a fatal undermining of our preservation of error rule.
Second, we cannot agree that, ipso facto, a failure to preserve an otherwise reversible error for appeal establishes that counsel has made a professional mistake in judgment, much less committed the serious type of error which the Knight-Strickland standard contemplates. In the context of this case, opinions by experienced trial lawyers differ widely as to whether it is wise to object and move for a mistrial in the midst of a prosecuting attorney's argument to the jury. Some advise against it, or suggest it be used sparingly, as they feel such objections tend to antagonize the judge or jury thus jeopardizing future court rulings or a favorable verdict. Accord R. Keeton, Trial Tactics and Methods §§ 4.2, 5.4 (1973). Moreover, they contend that inflammatory-type arguments often boomerang against the prosecutor in the eyes of the jury, and are best handled in rebuttal or by ignoring the arguments altogether. Others contend that objections only tend to emphasize the argument and generally ought not be made. In addition, counsel must weigh whether a mistrial at this point would be in the client's best interests given his assessment of the likelihood of an acquittal. Compare Nelson v. Reliable Insurance Co., 368 So.2d 361 (Fla. 4th DCA 1978). In sum, the decision to object and move for mistrial based on a prosecutor's improper argument is a complicated trial strategy decision in which reasonably competent criminal defense lawyers may and often do differ. Absent special circumstances, the failure to so object and move for a mistrial cannot amount to ineffective assistance of counsel. Collins v. State, 536 S.W.2d 928 (Mo. App. 1976).
We do not overlook the expert testimony adduced below from an able criminal defense lawyer that counsel's failure to preserve the record for appeal on the prosecuting attorney argument point was not "within the standard of reasonably competent counsel in this community." (Transcript, Rule 3.850 hearing [T.], at 41). The sole basis for this expert opinion, however, was that the comments in question were legally objectionable and therefore counsel should have objected and moved for a mistrial to preserve the point for appeal. (T. 41-45). The witness did not take into account what *788 tactical reasons, if any, counsel might have had for not objecting or moving for a mistrial. Indeed, the witness did not speak to trial counsel in this case and did not consider trial strategy factors at all in rendering his opinion. Consequently, the witness' expert opinion on this matter was, itself, fatally flawed under the Knight-Strickland standard. Moreover, it should be noted that trial counsel did not testify as a witness at the hearing below.
As stated in Strickland, "[j]udicial scrutiny of counsel's performance must be highly deferential," and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" ___ U.S. at ___, 104 S.Ct. at 2065-66, 80 L.Ed.2d at 694-95. No such showing has been made herein that counsel's decision not to object and move for a mistrial could not be considered sound trial strategy, and therefore, the strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance has not been overcome in this case.

III
The final judgments of conviction and sentences under review are affirmed. The final order vacating these judgments of conviction and sentences is reversed.
Affirmed in part; reversed in part.
NOTES
[1] The trial court, in the order under review, stated as follows:

"The prosecutor in his opening statement made the following comments without objection:
`The testimony is going to be when they saw her, she was pinned underneath the car. She died instantly at that moment. Of course, she lived through the horror of that initial impact.'
`Barbara Skeen's car, also hit by that force, ends up over here turned over (indicating). By divine intervention or whatever you want to call it, she was only injured slightly and her daughter, a six year old, also was just slightly injured. Bruises, cut. Of course, the shock never leaves you.'
`William Blackwelder, once again by divine intervention nothing happened to this man or the ten or twelve school kids that he had with him, but the horror that he is going to describe to you probably will never leave this man's memory.'
`When this truck hit, the two passengers in the rear, in the bed of the truck, were thrown out of that truck. One landed here (indicating). Mirga Terrell, she died instantly. She hit the pavement.'
`Another individual landed down here (indicating).'
`Jack Gray, a passenger riding up front with Anderson, also was thrown out of that truck. He lingered on two weeks and then died.'
`It was a [s]coreboard for Mr. Anderson that day. Mr. Anderson that day was directly responsible for the deaths of three individuals.' (T. 165, 166)
In his closing argument, the prosecutor made the following statements:
`Barbara Skeen had her six year old in the car.
William Blackwelder had twelve people in his car, all youngsters, eight and nine year olds. By a miracle of God, they were not injured.' (T. 432)
`What you see here is the result of Robert Anderson. He was responsible for three deaths. It's just as if he took a knife and put it through their heart.'
`Robert Anderson became the apocalypse on September 2nd. He was doomed destruction and death on September 2, 1981.' (T. 438) Defense counsel posed a general objection to the last comment, but did not move for a mistrial."
R. 164.
[2] The court specifically declined to reach other claims of ineffective assistance of counsel asserted in the motion to vacate, and the defendant has not cross-appealed from this decision. We, accordingly, express no views on the other claimed errors of counsel at the trial of this case.
[3] Absent a showing of fundamental error, the failure of counsel to properly object and move for a mistrial precludes an appellate court in Florida from reviewing the propriety of the prosecutor's remarks; plainly, the remarks in this case did not constitute fundamental error. Wilson v. State, 436 So.2d 908 (Fla. 1983); Maggard v. State, 399 So.2d 973 (Fla.), cert. denied, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598 (1981); Clark v. State, 363 So.2d 331 (Fla. 1978); Gibson v. State, 351 So.2d 948 (Fla. 1977), cert. denied, 435 U.S. 1004, 98 S.Ct. 1660, 56 L.Ed.2d 93 (1978); Songer v. State, 322 So.2d 481 (Fla. 1975), sentence vacated, 430 U.S. 952, 97 S.Ct. 1594, 51 L.Ed.2d 801 (1977); State v. Jones, 204 So.2d 515 (Fla. 1967); Delaney v. State, 342 So.2d 1098 (Fla. 3d DCA 1977).