574 So.2d 1195 (1991)
Robert SMITH and Lem Adam Washington, Appellants,
v.
The STATE of Florida, Appellee.
Nos. 89-1954, 89-1818.
District Court of Appeal of Florida, Third District.
February 12, 1991.
Bennett H. Brummer, Public Defender, Robert Kalter, Asst. Public Defender, and Ronald S. Lowy, Sp. Asst. Public Defender, for appellants.
Robert A. Butterworth, Atty. Gen. and Monique T. Befeler, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and HUBBART and BASKIN, JJ.

REVISED OPINION
SCHWARTZ, Chief Judge.
Smith and Washington were tried together and convicted of the armed robbery of a Farm Store. We reverse Smith's conviction for a new trial because of a Neil-Slappy violation; affirm Washington's conviction because he did not raise the pertinent objections below, but order his resentencing after remand.

*1196 Smith

During the voir dire, the state exercised three peremptory challenges to exclude three blacks from the prospective jury. Counsel for Smith  pointedly not joined by Washington's attorney  raised the now familiar Neil objection that the challenge had been exercised on the basis of the jurors' race. The trial court apparently, and no doubt correctly, agreed that a prima facie showing to that effect had been made and, pursuant to State v. Neil, 457 So.2d 481 (Fla. 1984), ordered the prosecutor to explain the grounds upon which the black jurors had been stricken. Accordingly, the prosecutor then propounded supposedly race-neutral reasons for the challenges.[1] The trial judge, however, on the ground that other black jurors remained on the panel, then specifically declined to rule, as Smith requested, upon the sufficiency of the explanation. He said:
At this point, there are three blacks on the jury, okay? They are not entitled to a jury of all black people. There are three black people on the jury and I am going to leave it at that. I am not going to rule with regard to whether these other strikes are correct or not at this time.
This refusal to rule was clearly reversible error.
It is entirely established Florida law that, once a Neil inquiry has been, as it was here, appropriately initiated, it is incumbent upon the trial judge to evaluate the credibility of the explanation for the peremptory challenges and "to determine whether the proffered reasons, if they are neutral and reasonable, are indeed supported by the record." Tillman v. State, 522 So.2d 14, 16-17 (Fla. 1988). Moreover, because even the exercise of a single racially-motivated prosecution strike is constitutionally forbidden, State v. Slappy, 522 So.2d 18 (Fla. 1988), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988), it does not matter for these purposes whether other black jurors actually serve on the defendant's jury. Slappy, 522 So.2d at 21; see also Stubbs v. State, 540 So.2d 255 (Fla. 2d DCA 1989); Moriyon v. State, 543 So.2d 379 (Fla. 3d DCA 1989), review dismissed, 549 So.2d 1014 (Fla. 1989). Hence there can be no question of the reversible incorrectness of a lower court's declination to rule, one way or the other, as to the Slappworthyness of the proffered explanation. Thompson v. State, 548 So.2d 198, 202 (Fla. 1989), which is procedurally almost identical to this situation,[2] squarely so holds. For this reason, Smith's conviction is reversed for a new trial.[3]

Washington
We cannot afford similar relief to Washington. This is because, exactly contrary to the circumstances in Charles v. State, 565 So.2d 871 (Fla. 4th DCA 1990), the Neil-Slappy objection was raised solely by defendant Smith and was not also *1197 raised, joined or adopted in any way by Washington, who, to the contrary, made a personal statement that he was satisfied with the result of the jury selection process. Johnson v. State, 348 So.2d 646 (Fla. 3d DCA 1977); Wright v. State, 318 So.2d 477 (Fla. 4th DCA 1975), cert. denied, 334 So.2d 609 (Fla. 1976); accord Barnes v. State, 168 Ga. App. 925, 310 S.E.2d 777 (1983); People v. Foster, 100 A.D.2d 200, 473 N.Y.S.2d 978 (1984), cert. denied, 474 U.S. 857, 106 S.Ct. 166, 88 L.Ed.2d 137 (1985); see Charles, 565 So.2d at 872; 4 C.J.S.Appeal & Error § 251 (1957). In the light of the strict requirements imposed upon a complaining defendant by Neil and its progeny to assert and press the exclusion issue during the jury selection process itself, it is entirely clear that Washington's failure to do so[4] both precludes reversal in his favor and any holding that the issue could constitute fundamental error which is cognizable without that preservation. See Castor v. State, 365 So.2d 701 (Fla. 1978). Washington's conviction is therefore[5] affirmed.
The lower court, after (concededly appropriately) finding that Washington was an habitual violent felony offender, see section 775.084(1)(b), Florida Statutes (1989), sentenced him to an extended term of life imprisonment without eligibility for release for fifteen years. While section 775.084(4)(b)(1) provides that such a penalty "may" be imposed under the instant circumstances, it is clear, as the use of the term "may" demands, and as the state expressly conceded both in its brief and at oral argument, that such a sentence is not mandatory. State v. Brown, 530 So.2d 51, 53 (Fla. 1988) (a fortiori holding that section 775.084(4)(a), providing that life sentence "shall" be imposed upon habitual felony offender, is not mandatory); State v. Padron, 571 So.2d 102 (Fla. 3d DCA 1990) (same); McNair v. State, 563 So.2d 804 (Fla. 3d DCA 1990) (same). But see Donald v. State, 562 So.2d 792 (Fla. 1st DCA 1990) (opposite result as to § 775.084(4)(b); State v. Brown, 530 So.2d 51, not cited). Various comments of the trial judge, however, made prior to and during sentencing which, for example, indicated his reluctance to sentence Washington, as a drug addict susceptible to rehabilitation, to such a term and stated his understanding that the statute indicated that the defendant "should" be sentenced to life  leave us, at best, uncertain as to whether the court believed that it could in fact decline to impose that sentence. We therefore believe that the interests of justice require us to vacate the sentence so that the trial judge may consider the matter as one within his discretion.[6]
As to case no. 89-1954 reversed, as to case no. 89-1818, affirmed in part, vacated in part and remanded.
NOTES
[1] While we need not reach the issue in the light of our disposition of the case, it seems highly unlikely that the reasons given would have survived the tests devised in Slappy to determine the neutrality question.
[2] In reversing the defendant's conviction because the trial court did not analyze or rule upon the sufficiency of the state's reasons for excluding black jurors, the court noted:

... [t]he present record reflects a grave possibility that the trial court below relied upon the state's erroneous statement that Neil only comes into play if there is a "systematic" exclusion of blacks. This is the only reasonable conclusion based on the record. Indeed, the trial court first began to conduct a Neil inquiry but then reversed itself after hearing the state's erroneous statement of the law. Moreover, every relevant statement by the trial court incorrectly characterized Neil as applying only to "systematic" uses of the peremptory.
Thompson, 548 So.2d at 202.
[3] Smith is to be allowed at the new trial to display his tattooed arms to the jury  for the purpose of impeaching the testimony of an eyewitness who noticed no such tattoos  without requiring him to take the witness stand and subject himself to cross-examination. Contrary to the ruling below, it is clear that such a display is non-testimonial in nature which does not implicate the defendant's privilege against self-incrimination. See Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); United States v. Bay, 762 F.2d 1314 (9th Cir.1984); Macias v. State, 515 So.2d 206 (Fla. 1987).
[4] It has not escaped us that this set of circumstances may well give rise to a claim of ineffective assistance of Washington's trial counsel (who is not the attorney now representing him on appeal). We therefore determine the present issue specifically without regard to a subsequent proceeding under Fla.R.Crim.P. 3.850 (1990).

Because, however, serious issues are presented, among other things, as to whether counsel's failure to object may serve to obviate the preservation requirement through the medium of relief under 3.850, see Anderson v. State, 467 So.2d 781 (Fla. 3d DCA 1985), pet. for review dismissed, 475 So.2d 693 (Fla. 1985), and whether the lack of objection may have stemmed  as it is deemed to have done  from a deliberate strategic determination of counsel to go forward with a jury with which he was pleased, State v. Stirrup, 469 So.2d 845 (Fla. 3d DCA 1985), review denied, 480 So.2d 1296 (Fla. 1985); Anderson, 467 So.2d at 785, we deem it entirely inappropriate  and Washington does not contend otherwise  to invoke any exception to the rule that ineffective assistance claims may not be raised on direct appeal and should be relegated to post-conviction proceedings under 3.850. Kelley v. State, 486 So.2d 578, 585 (Fla. 1986), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986); State v. Barber, 301 So.2d 7 (Fla. 1974); Hammer v. State, 543 So.2d 437 (Fla. 2d DCA 1989).
[5] We find no merit in Washington's other claims of trial error.
[6] Washington's other challenge to the sentence, which claims that an habitual offender sentence remains subject to the guidelines, is totally baseless. § 775.084(4)(e), Fla. Stat. (1989); § 921.001(4)(c)(2), Fla. Stat. (1989); see Roberts v. State, 559 So.2d 289 (Fla. 2d DCA 1990), cause dismissed, 564 So.2d 488 (Fla. 1990).