WALLACE, Judge.
 

 A Ford Escort occupied by John Alfred Walton III and two companions — all of whom had been drinking for several hours and exhibited signs of impairment — ran a red light and struck a minivan, causing serious bodily injury to a small child in the minivan. In a prosecution for driving under the influence (DUI) with serious bodily injury, the circuit court granted Mr. Walton’s motion to suppress his postcrash admissions that he had been driving the Escort on the ground that the State could not establish the corpus delicti of the offense. Mr. Walton argued, and the circuit court agreed, that the State was required to present independent proof of the identity of the Escort’s driver. The State appeals the circuit court’s order.
 
 [1]
 

 Because the evidence demonstrated that one of the passengers in the minivan was seriously injured by someone who was driving the Escort while his normal faculties were impaired by alcohol, the State is able to establish the corpus delicti of the offense. Under these circumstances, the State is not required to prove the identity of the driver of the Escort as part of the corpus delicti of the offense. Thus the circuit court erred in suppressing Mr. Wal
 
 *903
 
 ton’s postcrash admissions on the ground of the State’s inability to establish the corpus delicti, and we reverse and remand for further proceedings.
 

 I. THE CRASH AND THE INVESTIGATION
 

 On the morning of October 22, 2006, a purple Ford Escort ran a red light at the intersection of Damascus Road and State Road 60 in Clearwater. When the Escort went through the red light, a minivan trav-elling through the intersection struck the Escort in the front and rear doors on the driver’s side. Two City of Clearwater police officers, David Bruneau and Craig Murray, investigated the crash.
 

 When the officers arrived at the scene, there were three people in or near the Escort: Mr. Walton was standing on the driver’s side toward the front; Anthony Godfrey was standing on the passenger’s side toward the rear; and Timothy God-frey, Anthony’s brother, was sitting in the front passenger seat. Timothy Godfrey was not wearing a seatbelt. Witnesses reported that after the accident a man wearing a baseball cap got out of the back seat of the Escort and threw a bottle into the bushes. The investigating officers found one empty beer can and one unopened bottle of beer inside the Escort. The unopened bottle of beer was still cool to the touch.
 

 Officer Bruneau spoke with Mr. Walton at the scene and noted a strong odor of alcohol on Mr. Walton’s breath and that Mr. Walton’s speech was somewhat slurred. Officer Murray similarly stated that when he spoke with Mr. Walton at the scene, Mr. Walton’s eyes were bloodshot, his speech was slurred, and he had an odor of alcohol on his breath. Mr. Walton twice told the officers that he was driving the Escort at the time of the crash. The officers arranged for Mr. Walton’s blood to be drawn, and the test results showed that he had blood-alcohol levels of .143 and .145.
 

 The officers interviewed Timothy and Anthony Godfrey at a local hospital. Timothy Godfrey told the officers that he, his brother, and Mr. Walton had been drinking all night and into the morning. Timothy Godfrey also said that the three men had “smoked a little bit of pot.” Anthony Godfrey stated that when the crash occurred, he was in the back seat with an open bottle of liquor, which he later threw into the bushes. Officer Bruneau detected the odor of alcohol on both of the Godfrey brothers. Neither of the brothers identified who was driving the Escort at the time of the crash.
 

 The primary damage to the Escort was to the front and rear doors on the driver’s side; the force of the collision pushed the doors in from six to twelve inches. All three occupants of the Escort sustained injuries. Anthony Godfrey had a laceration to his left arm that required surgery, and he had an injury to his left shoulder. Timothy Godfrey had a suspected closed-head injury. Emergency personnel immobilized him on a backboard at the scene of the crash. But the State did not present any evidence of the location of Timothy Godfrey’s head injury or how he may have struck his head. And while Mr. Walton did not have any major complaints at the scene, he went to a hospital the next day to be treated for two broken ribs on his left side. Officer Bruneau testified that Mr. Walton’s injuries could have been caused by sitting in the Escort’s driver’s seat when the accident occurred, and Officer Murray testified that the injuries to Mr. Walton’s ribs were consistent -with his having been the driver of the Escort.
 

 All three occupants of the minivan— along with the Godfrey brothers — were transported to a local hospital for treat
 
 *904
 
 ment after the accident. A small child who was in the minivan sustained a deep laceration to his forehead. Based on the investigation into the circumstances of the crash, the State charged Mr. Walton with two offenses: count one, DUI with serious bodily injury, a violation of section 316.193(3)(c)(2), Florida Statutes (2006), and count two, driving while license suspended or revoked, a violation of section 322.34(2)(a), Florida Statutes (2006).
 

 II. THE MOTION TO SUPPRESS AND THE CIRCUIT COURT’S RULING
 

 Mr. Walton filed a motion to suppress his statements that he was driving the Escort at the time of the crash.
 
 [2]
 
 He alleged that “[tjhere were no witnesses at the scene who were able to identify the driver of the purple Escort” and that “[a]t the time Officer Bruneau spoke with Mr. Walton, and at all times material to this prosecution, no sufficient Corpus Delecti [sic] existed to support the admissibility of any statements purportedly made by [Mr.] Walton.” At the hearing on the motion to suppress, defense counsel argued that the State could not establish the corpus delicti of the DUI offense because, apart from Mr. Walton’s statements, the evidence was insufficient to establish whether Mr. Walton or Timothy Godfrey was driving the Escort at the time of the crash.
 
 [3]
 

 The State argued that the evidence supported a finding that Mr. Walton was the driver. In support of this view of the evidence, the State noted that the broken ribs on Mr. Walton’s left side were the type of injury that the Escort’s driver would have sustained when the driver’s side door caved into the passenger compartment from the force of the collision. The circuit court disagreed and took a different view of the evidence. As the circuit court saw the facts, it was impossible to conclude whether Mr. Walton or Timothy Godfrey was the driver.
 

 The State also argued that the evidence reflected that both Mr. Walton and Timothy Godfrey were intoxicated and that “whichever one of them is the driver of the vehicle was intoxicated[;] ... therefore, the elements of the crime have been established and corpus delicti has been satisfied.” The State asserted that “[t]he case
 
 *905
 
 law doesn’t say that the identity of the defendant is part of corpus delicti.”
 

 The circuit court ruled that this court’s decision in
 
 State v. Colorado,
 
 890 So.2d 468 (Fla. 2d DCA 2004), required the State to show that Mr. Walton was the driver of the Escort independently of his postcrash admissions to the officers in order to establish the corpus delicti for the DUI offense. At the hearing, the circuit judge said:
 

 I’m reading from
 
 Colorado
 
 which says the defendant’s admission he was the driver of the vehicle was not admissible, where the State could not prove without such statements he was driving at the time he allegedly committed the offenses charged. So apparently, at least to some extent, you have to I guess maybe by a preponderance or more likely than not suggested [independent of the statements that -that person is driving the car. And that’s what I’m reading them to say in
 
 Colorado
 
 ....
 

 [[Image here]]
 

 ... It’s not as simple as saying somebody was driving. It’s one of two guys, so that’s enough to give to a jury. - It’s not that simple if you read what they are saying in
 
 Colorado
 
 and then the concurring opinion [by Judge Alten-bernd] goes on to say in a different state where it has different rules, they would be ruled on differently in that case.
 

 Based on its conclusion that the State was required to establish the identity of the driver of the Escort as part of the corpus delicti, the circuit court granted Mr. Walton’s motion to suppress. This appeal followed.
 

 III. DISCUSSION
 

 A. The State’s Arguments
 

 On appeal, the State argues that the circuit court erred in granting Mr. Walton’s motion for two separate reasons. First, “there was circumstantial evidence that [Mr. Walton] was the driver.” Second, “as to the DUI count, the corpus delicti that a drunk driver was involved was established by evidence that all occupants of the car that caused the accident had been drinking.”
 
 [4]
 
 Based on our disposition of the case, we need not address the State’s first argument. Turning to the State’s second argument, we disagree with the circuit court’s reading of
 
 Colorado
 
 and conclude that the circuit court’s ruling that the State was required to establish Mr. Walton’s identity as the driver of the Escort under the facts of this case is inconsistent with established precedent.
 

 B. The Corpus Delicti Rule in the DUI Context
 

 In
 
 State v. Allen,
 
 335 So.2d 823 (Fla.1976), the Supreme Court of Florida addressed the application of the corpus de-licti rule in the context of a conviction for DUI manslaughter which had been reversed by the First District. In that case, the defendant and the victim occupied the same vehicle. The supreme court noted that the corpus delicti rule requires “that before a confession is admitted the state
 
 *906
 
 has the burden of proving by substantial evidence that a crime was committed, and that such proof may be in the form of circumstantial evidence.”
 
 Id.
 
 at 824. It observed that in reversing the defendant’s convictions, “the First District Court of Appeal appears to have adopted a legal standard which requires overwhelming proof by direct evidence that the crime charged was committed
 
 and that the defendant is the guilty party.” Id.
 
 at 824-25 (emphasis added). In rejecting this reasoning, the supreme court said that proof of the necessary elements of the alleged crime may be made by circumstantial evidence before admission of a defendant’s confession.
 
 Id.
 
 at 825. The court also stated that the corpus delicti rule
 

 obviously does not require the state to prove a defendant’s guilt beyond a reasonable doubt before his or her confession may be admitted. Indeed, as this Court has stated before, it is preferable that the occurrence of a crime be established before any evidence is admitted to show the identity of the guilty party, even though it is often difficult to segregate the two.
 
 The state has a burden to bring forth “substantial evidence” tending to show the commission of the charged crime. This standard does not require the proof to be uncontradicted or overwhelming, but it must at least show the existence of each element of the crime.
 

 Id.
 
 at 825 (emphasis added) (footnotes omitted). Significantly, the court stated, “We also reject the implication in the district court’s opinion that identification of the defendant as the guilty party is a necessary predicate for the admission of a confession.”
 
 Id.
 

 The supreme court then applied the corpus delicti rule to the facts of the case before it and found that the State had met its preliminary burden of establishing the corpus delicti for DUI manslaughter with respect to the victim, Curtis Black.
 
 Id.
 
 at 825-26. It noted that “[t]he sole contention of [the defendant] was that, before his confession was admitted, the state had not proved he was driving the vehicle from which Curtis Black was thrown and killed.
 
 This question is relevant, since there would have been no crime if Black had been the driver.” Id.
 
 at 825 (emphasis added). Thus, while recognizing that the corpus delicti rule does not generally require the State to establish that the defendant is the guilty party, the court found on the facts before it that establishing the driver’s identity was necessary to show that a crime had been committed. Proof of the driver’s identity was necessary because — on the facts in
 
 Allen
 
 — there would have been no crime if the victim had been driving the vehicle.
 

 In
 
 Burks v. State,
 
 613 So.2d 441 (Fla.1993), the supreme court reaffirmed its holding in
 
 Allen. Burks
 
 also involved a DUI manslaughter conviction. The defendant allegedly drove a tractor-trailer that collided with and killed a motorcyclist. Although there was evidence apart from the defendant’s confession that the defendant was the driver of the tractor-trailer, the court noted that “the identity of the defendant as the guilty party is not a necessary predicate for the admission of a confession.”
 
 Id.
 
 at 443 (citing
 
 Allen,
 
 335 So.2d at 825). Thus, in
 
 Burks,
 
 the supreme court again recognized in the context of a DUI manslaughter case that the defendant’s identity as driver is not generally necessary to establish the corpus delicti.
 

 A good example of a case demonstrating both when it is critical and when it is not critical to establish the identity of the driver in a DUI case is
 
 Anderson v. State,
 
 467 So.2d 781 (Fla. 3d DCA 1985), where the Third District addressed the proof of the corpus delicti with regard to three counts of DUI manslaughter. In
 
 Anderson,
 
 a truck occupied by three persons was traveling at a high rate of speed, ran a stop
 
 *907
 
 sign, and collided with a car traveling on an intersecting road.
 
 Id.
 
 at 783. The impact with the truck “caus[ed] the car to strike [a second] ear[,] killing the driver of the first car.”
 
 Id.
 
 The State established
 

 that the [driver of the] truck took no evasive action [before] impact[,] that all three [occupants of] the truck were thrown out [upon] impact[,] that the defendant was found unconscious alongside the driver’s side of the truck, and [that] the other two occupants were found dead in front of the truck.
 

 Id.
 
 “[B]eer cans were strewn on the ground around the truck, and several more beer cans and a vodka bottle were found lying inside the truck.”
 
 Id.
 
 The defendant’s blood-alcohol level was .22.
 
 Id.
 

 In concluding that the State’s evidence was sufficient to establish the corpus de-licti for the manslaughter charge involving the death of the driver of the first car, the court said:
 

 [A]s to the manslaughter count involving the death of the driver of the first car struck by the “death truck,” plainly there was abundant evidence, apart from the defendant’s statement, establishing a corpus delicti of the crime charged. Clearly, this driver was killed due to the criminal agency of another
 
 by someone
 
 who was driving the “death truck” in an intoxicated state. The manner in which the truck was driven to the point of impact, plus the beer cans and vodka bottle later found in and around the truck, clearly show this.
 
 It was, of course, unnecessary to establish, apart from the above statement, that the defendant was the guilty party
 
 — ie.,
 
 the driver of the “death truck”
 
 — in
 
 order to lay a predicate for the admission of this statement.
 

 Id.
 
 at 783-84 (emphasis added) (citing
 
 Allen,
 
 335 So.2d at 825).
 

 However, the court observed that establishing the corpus delicti with regard to the deaths of the other two occupants of the “death truck” presented a closer question. It explained:
 

 Second, as to the remaining two manslaughter counts involving the deaths of the two occupants in the “death truck,” the question is closer and more complicated; ultimately, however, we think the evidence was sufficient, apart from the defendant’s statement, to establish a corpus delicti of these crimes as well. As
 
 to these deaths, it was essential to show on each count that the person allegedly killed was not the driver of the “death truck,” for if he was, there would be no crime committed as the person allegedly killed would have merely killed himself
 
 Here the evidence is substantial that in all likelihood neither of these occupants were, in fact, driving the “death truck,” and did not kill themselves, because their bodies were found in front of the truck after the accident; the defendant, by way of contrast, was found lying near the driver’s side of the truck. This shows that the defendant most likely had been driving the truck and that his two dead companions had not.
 

 Id.
 
 at 784 (emphasis added).
 

 Thus the
 
 Anderson
 
 court recognized that identification of a defendant as the driver is not generally a necessary predicate to the admission of the defendant’s confession. But the court’s opinion in
 
 Anderson
 
 illustrates that under certain circumstances, the defendant’s identity as the driver is critical to establishing that a crime occurred. Under those particular circumstances, the defendant’s identity as the driver then becomes a necessary part of the corpus delicti.
 

 C. This Court’s Decision in
 
 Colorado
 

 In
 
 State v. Colorado,
 
 890 So.2d 468 (Fla. 2d DCA 2004), this court addressed the
 
 *908
 
 corpus delicti rule in the context of a DUI manslaughter case.
 
 Colorado
 
 involved a one-car accident in which, similar to the facts in
 
 Allen,
 
 the defendant and the victim occupied the same vehicle.
 
 Id.
 
 at 469. The only evidence that the defendant was driving at the time of the accident was his admission.
 
 Id.
 
 After the circuit court granted the defendant’s motion to exclude the defendant’s statement based upon the State’s inability to establish the corpus delicti, the State sought rehearing based on new information that the victim “had a blood alcohol level of .18 grams of alcohol per 100 milliliters of blood.”
 
 Id.
 
 at 470. The State argued that the “evidence showed either that [the defendant] committed DUI manslaughter or that [the victim] committed DUI with personal injury. But there was no evidence ... that [the defendant] was injured in the accident.”
 
 Id.
 
 The circuit court denied the motion for rehearing.
 
 Id.
 

 On appeal, this court observed that under the corpus delicti rule, “[t]he State 'must at least show the existence of each element of the crime’ to authorize the introduction of a defendant’s admission or confession.”
 
 Id.
 
 (quoting
 
 Allen,
 
 335 So.2d at 825). Further, “the State ‘must show that a harm has been suffered of the type contemplated by the charges ... and that such harm was incurred due to the criminal agency of another. This usually requires the identity of
 
 the victim
 
 of the crime.’ ”
 
 Id.
 
 (emphasis added) (quoting
 
 Allen,
 
 335 So.2d at 825). We noted that “[t]he supreme court has stated that ‘[i]n order to establish the corpus delicti in a homicide case, it is necessary to prove three elements: first, the fact of death; second, the criminal agency of another person as the cause thereof; and third,
 
 the identity of the deceased person.’
 
 ”
 
 Id.
 
 (emphasis added) (quoting
 
 Jefferson v. State,
 
 128 So.2d 132, 135 (Fla.1961)). We then reviewed several Florida cases addressing the type of evidence necessary to place a defendant behind the wheel of a car involved in an accident before admitting the defendant’s statement that he was the driver.
 
 Id.
 
 at 471.
 

 Ultimately, the
 
 Colorado
 
 court concluded that the State was unable to establish that the defendant was driving the vehicle and that the corpus delicti rule prevented the State from relying solely on his confession “to establish this critical element.”
 
 Id.
 
 at 471. We rejected “the State’s novel suggestion that the commission of a crime could be shown by substituting the victims
 
 because there [was] no record evidence that Colorado suffered personal injuries so as to establish a corpus delicti for DUI with personal injuries.” Id.
 
 at 471-72 (emphasis added). Moreover, “[t]he harm contemplated by each charge against [the defendant] — DUI manslaughter, vehicular homicide, and driving without a valid license causing death — is death.”
 
 Id.
 
 at 472. And, “[t]he fact that both men were intoxicated show[ed] the second, criminal agency, prong of the corpus delicti, but no more.”
 
 Id.
 
 In his concurring opinion, Judge Altenbernd pointed out that because both occupants of the subject vehicle were under the influence of alcohol, the only remaining issue was “[w]hich drunk was driving the car?”
 
 Id.
 
 at 473. But the alleged victim could not be prosecuted for DUI because he was dead.
 
 Id.
 

 Under the particular facts in
 
 Colorado,
 
 establishing that the defendant was the driver of the vehicle was a necessary part of the corpus delicti. And Judge Alten-bernd noted in his concurring opinion that other states do not require that the defendant’s identity as the driver be shown to establish the corpus delicti for DUI and that these jurisdictions merely require proof that “someone” was driving under the influence.
 
 Id.
 
 at 472. He observed
 
 *909
 
 that if that were the law in Florida, the court would have reversed the order excluding Mr. Colorado’s admission and remanded for trial.
 
 Id.
 
 However, a fair reading of this court’s holding in
 
 Colorado
 
 does not require that the State prove the driver’s identity in a DUI case to establish the corpus delicti when the identity of the driver is not critical to showing that a crime occurred.
 

 D. Application of Supreme Court Precedent and
 
 Colorado
 
 to this Case
 

 Here, the circuit court misinterpreted this court’s decision in
 
 Colorado
 
 to conclude that the State must always prove the identity of the driver in a prosecution for a DUI offense in order to establish the corpus delicti. In addition, its conclusion that the State was required to produce evidence to show “by a preponderance or more likely than not” that Mr. Walton was the driver of the Escort to establish the corpus delicti is contrary to the supreme court’s decisions in
 
 Allen
 
 and
 
 Burks.
 
 As noted above, those cases recognize that generally the corpus delicti rule does not require the State to establish that the defendant is the guilty party as a predicate for the admission of a confession and that the State need only establish “ ‘substantial evidence’ tending to show the commission of the charged crime.”
 
 Allen,
 
 335 So.2d at 825;
 
 see also Burks,
 
 613 So.2d at 443 (citing
 
 Allen,
 
 335 So.2d at 825).
 

 Although in some circumstances, such as those present in
 
 Allen
 
 and in
 
 Colorado,
 
 the identity of the defendant as the driver becomes a critical fact in establishing that a crime was committed, the facts pertinent to the charge for DUI with serious bodily injury in this case do not present such circumstances. Here, the State’s evidence established that someone drove the Escort while under the influence of alcohol and thereby caused serious injury to at least one of the occupants of the minivan. All three occupants of the Escort had been drinking, had been smoking marijuana, and showed signs of impairment. The Escort ran a red light and was struck by a minivan, causing a significant injury to a child in the minivan. Under these facts, the exact identity of the driver of the Escort was not necessary to establish that a DUI with serious bodily injury had occurred.
 
 See
 
 § 316.193(3)(c)(2). Because the identity of the driver of the Escort was not necessary to establish that a DUI with serious bodily injury had occurred, the circuit court erred in suppressing Mr. Walton’s statements that he had been driving the Escort when the crash occurred.
 

 We recognize that this court has cited
 
 Colorado
 
 for the general proposition that “[tjhere must be proof independent of a confession that the defendant was driving the vehicle involved in the crash” to establish the corpus delicti for DUI with serious bodily injury.
 
 Esler v. State,
 
 915 So.2d 637, 640 (Fla. 2d DCA 2005). We are also aware that the Fifth District has interpreted
 
 Allen
 
 and
 
 Burks
 
 to support this overly broad statement of the law.
 
 Syverud v. State,
 
 987 So.2d 1250, 1252 (Fla. 5th DCA 2008). And, in an earlier case, the Fifth District stated: “A, if not the, critical element of the corpus delicti of the offense of driving while intoxicated is evidence that the defendant was -driving at the time she allegedly committed the offense.”
 
 State v. Hepburn,
 
 460 So.2d 422, 426 (Fla. 5th DCA 1984).
 

 To the extent that these statements in
 
 Esler, Syverud,
 
 and
 
 Hepburn
 
 suggest that the State must always prove the defendant’s identity as the driver in a prosecution for a DUI offense as part of the corpus delicti, they are simply incorrect. But the sweeping pronouncements that appear in the opinions in these cases were not necessary to their holdings, and the cases are distinguishable from this case on their facts. In both the
 
 Esler
 
 and
 
 Hep-bum
 
 cases, which involved hit-and-run ac
 
 *910
 
 cidents, the State was unable to provide independent proof of the criminal agency prong of the corpus delicti, i.e., that the drivers of the vehicles in question were intoxicated at the time of the events at issue.
 
 [5]
 
 And in
 
 Syverud,
 
 the Fifth District concluded that substantial, competent evidence supported the trial court’s findings that the State had presented independent evidence that the defendant was driving the car that caused the crash. 987 So.2d at 1252. Thus the
 
 Esler, Syverud,
 
 and
 
 Hepburn
 
 cases were correctly decided on their particular facts, notwithstanding the incorrect generalizations that appear in the opinions. Accordingly, we find no conflict between these three cases and our decision in this case.
 

 IV. CONCLUSION
 

 The circuit court erred in concluding that this court’s decision in
 
 Colorado
 
 requires the State to establish that Mr. Walton was the driver of the Escort to satisfy the corpus delicti for the charge of DUI with serious bodily injury. Thus we reverse the order granting Mr. Walton’s motion to suppress and remand for further proceedings.
 

 Reversed and remanded.
 

 WHATLEY and SILBERMAN, JJ., Concur.
 

 [1]
 

 . We have jurisdiction in accordance with Florida Rule of Appellate Procedure 9.140(c)(1)(B).
 

 [2]
 

 . We observe that this case is procedurally unusual because Mr. Walton raised the issue of the State's ability to establish the corpus delicti in a pretrial motion to suppress rather than at trial. But the State did not object to this procedure. It seems to us that the evidence that the State presented at the hearing on the motion to suppress concerning the corpus delicti is likely different and less extensive than that which it may ultimately present at trial. Officers Bruneau and Murray were the only witnesses to testify at the hearing. The witnesses who were not present at the hearing who might testily at a trial include the two adult occupants of the minivan, the Godfrey brothers, other witnesses to the crash, emergency personnel, and the doctors and nurses who treated the injured.
 
 Cf. State v. Holzbacher,
 
 948 So.2d 935, 937 (Fla. 2d DCA 2007) (noting that in a case where the corpus delicti issue was raised by pretrial motion, "[t]he evidence presented by [the de-fendanl] at the hearing on his motion is probably different than the evidence that will ultimately be presented at trial”).
 

 [3]
 

 . Mr. Walton did not address the additional charge of driving while license suspended or revoked either in his motion to suppress or at the hearing. Thus the circuit court did not rule on the issue of whether the State could establish the corpus delicti of that offense independently of Mr. Walton's statements. For this reason, we do not address whether the State could establish the corpus delicti of the offense of driving while license suspended or revoked.
 

 The applicability of the accident report privilege established in section 316.066(7) to Mr. Walton’s statements was not an issue at the hearing before the circuit court. Thus we do not address this issue either.
 

 [4]
 

 . While the State argues that it was not required to establish that Mr. Walton was the driver with respect to count one, DUI with serious bodily injury, it acknowledged that it must do so with respect to count two, driving while license suspended or revoked. The State says in its brief that “[a]s to the charge of driving while license suspended or revoked, it would be necessary under the facts here, where there is no evidence reflecting whether or not either of the Godfrey brothers had a driver’s license, suspended or revoked or otherwise, to prove that [Mr. Walton] was the driver.” As mentioned above, because Mr. Walton did not address the charge of driving while license suspended or revoked in his motion or at the hearing, we do not reach that issue.
 

 [5]
 

 . Although
 
 Esler
 
 and
 
 Hepburn
 
 focus on the lack of independent evidence establishing the defendants' identities as the drivers of the vehicles that struck and caused injuries to the victims in those cases, it appears the defendants' statements were necessary to show that “someone” drove the vehicles in an intoxicated state when the accidents and injuries occurred. In
 
 Esler,
 
 the State's evidence established only that the victim had been struck in a parking lot by a white car driven by a woman and that the vehicle subsequently (led the scene. 915 So.2d at 639. In
 
 Hepburn,
 
 the State's evidence established that while crossing the street, the victims were struck by a 1978 Chevrolet Malibu registered to George Hepburn and that the vehicle fled the scene after the accident. 460 So.2d at 424. In addition, the investigating trooper in
 
 Hepburn
 
 collected debris from the vehicle at the scene and noted the next day that a portion of the Malibu’s grill was missing and that there was damage to its hood.
 
 Id.