MARSTILLER, J.
Joseph Christopher Acoff was convicted after a jury trial of leaving the scene of. a crash involving death (Count I), DUI manslaughter (Count II), and two counts Of DUI causing or contributing to serious bodily injury (Counts IV and V). Seeking reversal and discharge on the DUI-based offenses, Acoff contends the State did not establish the corpm delicti for those offenses, and therefore, could not introduce and rely on his statements admitting he was the driver of the vehicle that caused the crash. He specifically argues that under Florida law, the State was required to bring forth independent evidence that he was driving the offending vehicle. We disagree, and hold the State carried its corpus delicti burden in this case.
Prior to introducing Acoff s admissions, the State’s evidence showed that at approximately 3:00 a.m. on July 22, 2012, in Bay County, Florida, a light metallic colored SUV being driven erratically and traveling at a high rate of speed on Back Beach Road slammed into the rear end of another vehicle causing it to overturn. The speeding SUV continued on its way— now across the median- on the -wrong side of the roadr — not stopping after-hitting the other,vehicle,-while witnesses to the crash stopped to help the victims. A young man who had been in the back seat of the vehicle was killed; his father, and another passenger were injured. No one could describe the driver of the SUV.
Around 3:30 a.m,, a short black man wearing a reddish striped shirt walked into a Hampton Inn on Back Beach Road, about a mile from the crash scene, asking for help to get back to his apartment. He said he had walked to the hotel. The hotel employee who called a cab for the man said he seemed confused, possibly intoxicated.
At roughly the same time, police officers located a driver-less silver Acura MDX— an SUV — at the entrance to a shopping center parking lot about a half mile from the crash site and within seeing distance of the Hampton Inn. The SUV had recently been in an accident, with a still-smoking, damaged front end. It was leaking fluid, which enabled police to trace the path the vehicle had taken away from the crash location. In addition, the SUV had a large amount of maroon transfer paint on it, which matched the paint on the vehicle hit in the crash. Inside the SUV, police observed that the airbag had deployed, and there were keys still in the ignition. They also saw a remote control gate or garage door opener. The SUV was registered to ■ a Tammy Wilson, who was Acoff s fiancée and resided at the Ashley at Breakfast Point Apartments, unit 319. One of the keys on the key ring hanging from the SUV’s ignition was for that unit, and the remote control was for the main gate at Ashley Apartments.,
The cab called by the Hampton Inn employee arrived at approximately 3:45 a.m. The driver recalled the person he picked up was a black man wearing a red' shirt, and said the man appeared highly intoxicated. The man told the cab driver he had run off the road in his vehicle, and *187 they attempted to locate it. But when‘the man saw the police activity, in the area of the shopping center, he asked the driver to take him to Ashley .Apartments. ■ When they arrived at the destination, the. man did not have the code for the security gate, so he exited the cab and entered the apartment complex on foot. It was approximately 4:00 a.m. After dropping the man off, the now-suspicious cab driver went back to the area where he’d .seen the police activity to report his encounter with the man.'
At the time of the crash, Acoff lived in unit 319 with Ms. Wilson, the registered owner of the silver Acura SUV, who serves in the military and had1 recently been deployed to Afghanistan. One of the police officers investigating the crash found Acoff sitting on the steps outside the'apartment. Acoff showed signs of being impaired — his eyes were glassy and bloodshot, and he had difficulty steadying himself upon standing. When the officer knocked on the door to unit 319,-Acoff said he had taken “her” to the airport the previous morning to be deployed.
' The trial court found this evidence sufficient to establish the corpus delicti for the offenses Acoff was' charged with, and allowed the State to introduce the following statements by Acoff into evidence. The police officer who encountered Acoff outside the apartment he shared with Tammy Wilson testified that Acoff said the person the officer was looking for “don’t have anything [to] do with it; it’s all on me.” Upon being put in the police car, and read his Miranda rights, but not arrested, Acoff said he had been driving “my woman’s vehicle,” trying to get home, when “basically I, I went to sleep. I went to sleep on the wheel and that’s what happened.” He believed he had “totaled” the vehicle. During a recorded jailhouse telephone conversation between Acoff and Ms. Wilson the day after the crash, Acoff told her he wouldn’t be able to get into the apartment after, leaving the jail because his keys were in the apartment, and the other set of keys were stuck.in the ignition of her ear. He said he’d been unable to get in the apartment the night before for the same reason. He told Ms. Wilson, “the keys was in the car and I was totally out of it[.j” Later in the conversation, Ms. Wilson asked Acoff whether there had been anyone else in the car with’ him. He answered, “No, it was only me, it was only me, and the guy is dead. I’m trying to get probation, that’s what I want.”
The Florida Supreme Court, in State v. Allen, 335 So.2d 823 (Fla.1976), explained how the corpus delicti rule operates:
It is a fundamental principle of law that no person be adjudged guilty of a crime until the state has shown that a crime has been committed. The state therefore must show that a harm has been suffered of the type contemplated by the charges ... and that such harm was incurred due to the criminal agency of another. This usually requires the identity of the victim of the crime. A person’s confession to a crime is not .'sufficient evidence of a criminal act where no independent direct or circumstantial evidence exists to substantiate the occurrence of a crime....
This rule obviously does not require : the state to prove a defendant’s guilt beyond a reasonable doubt before his or her Confession may be admitted. Indeed, as this Court has stated before, it is preferable that the occurrence of a crime be established' before any evidence is admitted tó-show the identity of the. guilty party, even though it is often difficult to segregate the two. The state has a burden to bring forth ‘substantial evidence’ tending to show the commis *188 sion of the charged crime. This standard does not require the proof to be uncontradicted or overwhelming, but it must at least show the existence of each element of the crime....
Id. at 825 (footnotes omitted). The State may prove the corpus delicti with either direct or circumstantial evidence. Meyers v. State, 704 So.2d 1368, 1369 (Fla.1997); see Allen, 335 So.2d at 826.
Important to the argument Acoff makes here — that the defendant’s identity as the driver is required to establish the corpus delicti in DUI-related cases — in Allen, which involved a DUI manslaughter, the supreme court specifically rejected the notion that “identification of the defendant as the guilty party is a necessary predicate for the admission of a confession.” 335 So.2d at 825. But, identifying the defendant as part of the corpus delicti was necessary under the particular facts of that case because there were two people in the car that killed the victim — the appellant and the victim — and “there would have been no crime if [the victim] had been the driver.” Id. Thus, in a DUI-related case, while “identification of a defendant as the driver is not generally a necessary predicate to the admission of the defendant’s confession ... under certain circumstances, the defendant’s identity as the driver is critical to establishing that a crime occurred. Under those particular circumstances, the defendant’s identity as the driver then becomes a necessary part of the corpus delicti.” State v. Walton, 42 So.3d 902, 907 (Fla. 2d DCA 2010) (analyzing Anderson v. State, 467 So.2d 781 (Fla. 3d DCA 1985) in light of Allen).
Even this court’s prior decision in Farley v. City of Tallahassee, 243 So.2d 161 (Fla. 1st DCA 1971), which Acoff cites to support his contention, reflects that the particular facts of the case determine whether the corpus delicti necessarily includes the defendant’s identity as the driver. Farley was a DUI case in which a vehicle occupied by the defendant, his wife and their child ran off the road and ended up in a ditch. 243 So.2d at 161. When traffic accident investigators arrived on the scene, the defendant was not present; but when he arrived 30 minutes later, he admitted he had been driving when the ear went in the ditch. Id. at 162. He was charged, and at the subsequent criminal trial, the State used his admission to establish his guilt. Id. We held the State should not have been permitted to use the defendant’s statement at trial because, without it, “there was no proof that the offense charged was ever committed by anyone.” Id. Importantly, there was no “evidence as to the existence of circumstances from which it could be inferred that a drunken driver was at the wheel of the car when it went in the ditch[J” Id.
In Acoff s case, by contrast, there was circumstantial evidence that the fatal crash was caused by an impaired driver. Eyewitnesses testified that the SUV they saw was being driven erratically and was traveling at a high rate of speed before the crash, and, still speeding after the crash, it crossed the median and drove off on the wrong side of the road. This evidence is not overwhelming. But it did not need to be overwhelming or uncontradicted to show a crime occurred and satisfy the corpus delicti rule. Allen, 335 So.2d at 825. The evidence simply had to “at least show” that an impaired driver caused the crash that killed someone. See id. It did.
In any event, there was additional circumstantial evidence sufficient to identify Acoff as the driver of the SUV without reference to his admissions: Acoff was present in the vicinity of the crash shortly after it occurred; he appeared intoxicated; he told the cab driver he had run his car off the road; the only car police found in *189 the area was an SUV with front-end damage and transfer paint on it matching the color of the vehicle that was hit; the SUV was found a short walking distance from the Hampton Inn Acoff went to asking for a cab; the owner of the SUV was Acoffs fiancée; they lived together; she was out of town when the crash occurred; the key to their apartment was left in the abandoned SUV; and Acoff was found sitting outside the apartment, apparently unable to get in.
We conclude the State carried its burden to establish the corpus delicti of the DUI offenses charged, and therefore, was permitted to rely on Acoffs statements admitting he was driving the SUV when the fatal crash occurred. Accordingly, we AFFIRM his convictions.
RAY and SWANSON, JJ., concur.